Order of General Term reversed and that of Special Term affirmed.

FREDERICK SCHETTLER, as Administrator, &c., of CORNELIA H. SCHETTLER, Appellant, *v.* LAWRENCE SHUSTER SMITH et al, Respondents.

In construing dispositions of property, with reference to the statute against perpetuities, the rule is settled that any limitation is void as in violation of that statute, by which the suspension of the power of alienation will not necessarily, under all possible circumstances, terminate within the prescribed period. It is not enough that it *may* so terminate.

But where a limitation is made to take effect on two alternative events, one of which is too remote, and the other valid as within the prescribed limits, although such limitation is void, so far as it depends on the remote event, it will be allowed to take effect on the happening of the alternative one.

Accordingly, the testator, by his will, devised and bequeathed real and personal property to trustees, to receive the income thereof, pay it over to his son, J. S., during his life, and on his decease to pay the same to his said son's wife during her life; and on her decease, if he should leave a widow, or if he leave no widow, then on his decease, to convey the property to the issue of his said son, then living; but in case he should die without issue, then on the expiration of said life estates, to convey the property to other persons named in the will. J. S. was unmarried at the death of the testator, and died unmarried.—*Held*, it being possible, that the son might have married one unborn "and not in being," at the death of the testator, and that she might have survived said son, the trust to pay the income to her during her life, would not have terminated upon the death of two persons *in being at the death of the testator*, and hence the provision in favor of the wife of the son, and the further trusts to convey upon her decease might suspend the power of alienation of the real estate devised for a longer period than two lives, in being at the creation of the estate, and also the absolute ownership of the personal property bequeathed, for a period longer than two lives in being at the death of

the testator, and were *therefore void.* But *held,* further, that the limitation in the alternative upon the death of J. S., unmarried, and leaving no widow was valid, as by no possibility suspending the power of alienation beyond one life in being; and he having, in fact, died without issue and leaving no widow, the limitation to the other parties took effect.

The testator, in a succeeding clause of his will, devised and bequeathed other real and personal property to the same trustees, in trust, to pay over the income to another son, L. S., during his life, and with the same limitations in regard to his wife and widow, and issue, as in the preceding clause with reference to the son, J. S. L. S. had a wife living at the time of the making of the will and the death of the testator.—*Held,* that the clause directing payment of the rents and income to his wife during her natural life upon his decease, standing alone, would be construed to refer to the wife then living only ; but the further provision, that "*on her decease, if he leave a widow, or if he leave no widow, then on his decease to convey,*" &c., taken in connection with the other clauses of the will, must be construed to refer to *any* wife he might have subsequently married, though possibly unborn, and not in being at the death of the testator, and hence, the direction to convey upon the death of such widow is void as too remote.

*Held* further (the son being still living), should he die leaving no widow, the alternative, valid limitation, will take effect, as it has already done in the case of the other son, J. S.

Where the testator vests in his executors a portion of his property, in trust, to pay a fixed sum annually from the rents and income thereof, to his daughter, until her marriage; and on her marriage, in case she do not marry one S., or on the decease of said S., to pay her the whole of said rents and income during her life; and in case she marry the said S. the annuity to cease during her said coverture; and the said daughter having been paid, for several years, the said fixed sum annually, and then having married the said S.,—*Held,* there being no provision for the accumulation of the surplus of the rents and income of the said property, over and above the said annual sum previous to her marriage or the death of S., that she was entitled to the same under the Revised Statutes (1 R. S., 726, § 40), as the person (before her marriage with S.), presumptively entitled to the next eventual estate in the income. (DANIELS and LOTT, JJ., *contra.*)

(Cause argued October 1st, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first district, affirming a judgment at Special Term.

The action was for the construction of the will of John M. Smith, of the city of New York.

He made his last will in August, 1858, and died in January, 1861. At the date of his will, and when he died, his children and heirs-at-law were:

1. Lafayette Smith, who had a wife, Julia Smith. He died in May, 1862, never having had any children; he left a will, and letters of administration, with the will annexed, were granted to his widow, the said Julia, who was made a party defendant. The said Julia died February 22, 1868, and the action was revived against Ellen Farrell and Henry L. Wise, as her administrators.

2. John Jacob Smith, who died intestate in October, 1861, never having been married. His brother, the defendant Lawrence Shuster Smith, took out letters of administration on his estate in 1866.

3. Lawrence Shuster Smith, who, before the date of the will, had a wife, Ann Eliza. He had three children, James C. Smith, born before the will was made; Ann Eliza, born afterward, to wit, in March, 1859; and Cornelia H., also born afterward, to wit, in January, 1861. Lawrence Shuster Smith, his wife, and their three children, are still living, and are defendants. Lawrence Shuster Smith is also executor of the will now in question.

4. The original plaintiff in this suit, Cornelia H. Schettler, who, after the death of the testator, her father, married Frederick R. Schettler. They have one child. Cornelia died in February, 1867, while this suit was pending in the Supreme Court. The said Frederick R. Schettler was thereupon substituted as plaintiff, in the character of her administrator, with her will annexed.

The testator, John M. Smith, left a considerable real and personal estate, in which the original plaintiff, Cornelia H. Schettler, claimed an interest, alleging that sundry provisions of the will, disposing of the estate and depriving her of such interest, are invalid. The case was tried in the Supreme Court, by MASON, J., who decided that all the provisions of the will were valid, and that the said Cornelia H. Schettler had no interest in the estate. Judgment was rendered accord-

ingly, and on appeal, it was affirmed at the General Term. The plaintiff thereupon appealed to this court.

The following are the clauses of the will, discussed in the opinions:

2d. I give, devise and bequeath one equal fourth part or share of all the rest, residue and remainder of my estate, real and personal, wheresoever situate, to my executors, in trust, to receive the rents, issues, profits and income thereof, and pay the same to my son, Lafayette Smith, during his natural life; and on his decease, to convey and transfer the said one-fourth part or share, in fee, to the issue then living, of my said son Lafayette, by another than his present wife, *per stirpes;* but in case the said Lafayette shall die, without such issue, then to convey and transfer said one-fourth part or share, in fee, to the issue, then living, of my children, John J. and Lawrence S., and to the issue, then living, of my daughter, Cornelia, by a husband other than Frederick R. Schettler: the issue entitled to take, taking *per stirpes.*

3d. I give, devise and bequeath one other equal fourth part or share of all said rest, residue and remainder of my estate, real and personal, to my executors, in trust, to receive the rents, issues and profits and income thereof, and pay the same to my son, John Jacob Smith, during his natural life; and on his decease, to pay the said rents, issues, profits and income to his wife, during her natural life, and on her decease, if he leave a widow; or, if he leave no widow, then, on his decease, to convey and transfer said one-fourth part or share, in fee, to the issue, then living, of my said son, John Jacob, *per stirpes;* but in case the said John Jacob shall die, without issue, then, on the expiration of said life estates, to convey and transfer said one-fourth part or share, in fee, to the issue then living, of my son Lawrence, and the issue, then living, of my son Lafayette, by another than his present wife, and the issue, then living, of my daughter Cornelia, by a husband other than Frederick R. Schettler: the issue entitled to take, taking *per stirpes.*

4th. I give, devise and bequeath one other equal fourth part

or share of all said rest, residue and remainder of my estate, real and personal, to my executors, in trust, to receive the rents, issues, profits and income thereof, and pay the same to my son, Lawrence Shuster Smith, during his natural life; and on his decease, to pay said rents, issues, profits and income to his wife, during her natural life, and on her decease, if he leave a widow; or, if he leave no widow, then, on his decease, to convey and transfer said one-fourth part or share, in fee, to the issue, then living, of my said son Lawrence, *per stirpes;* but in case the said Lawrence shall die, without issue, then, on the expiration of said life estates, to convey and transfer said one-fourth part or share, in fee, to the issue, then living, of my son John Jacob, and the issue, then living, of my son Lafayette, by another than his present wife, and the issue, then living, of my daughter Cornelia, by a husband other than Frederick R. Schettler : the issue entitled to take, taking *per stirpes.*

5th. I give, devise and bequeath the remaining one other equal fourth part or share of all said rest, residue and remainder of my estate, real and personal, to my executors, in trust, to receive the rents, issues, profits and income thereof, and to pay therefrom the sum of $800 per annum, payable quarterly, beginning at my decease, to my daughter Cornelia, until her marriage; and on her marriage, in case she does not marry a person heretofore known by the name of Frederick R. Schettler, or on the decease of said Schettler, to pay my daughter all the said rents, issues, profits and income, from the time of my decease, during her natural life, free from the control of her husband, or liability for his debts; and on her decease, to convey and transfer the said one-fourth part or share, in fee, to the issue, then living, of my said daughter, by a husband other than said Schettler, *per stirpes;* but in case the said Cornelia shall die without issue by a husband other than said Schettler, then, on her decease, to convey and transfer the said one-fourth part or share, in fee, to the issue then living of my children, John J. and Lawrence S., and the issue of my son Lafayette, by another than his present wife: the

issue entitled to take, taking *per stirpes.* If at any time, my daughter Cornelia shall marry the said Schettler, then all her interest in my estate shall thereupon cease during such coverture, and the same shall, during such coverture, pass to my other children then living, and the issue of any then dead, *per stirpes :* Provided, however, that if the said Cornelia shall leave issue at her decease, by a husband other than said Schettler, such issue shall be entitled to her said one-fourth part or share, in fee, *per stirpes.*

*Wm. R. Martin,* for the appellant, on the point that the devises of John Jacobs' share in the third clause, and Lawrence Shuster's share in the fourth clause, were invalid as too remote, cited *Hawley* v. *James* (16 Wend., 62) ; *Thompson* v. *Carmichael's Exrs.* (1 Sandf. Chy., 394); Lewis on Perpetuities, 170 ; *Catlin* v. *Brown* (11 Hare, 375); *Lett* v. *Randall* (3 Sm. & Giff., 83) ; *Manypenny* v. *Dering* (2 De G. Mac. & Gord., 183); *Christie* v. *Gasling* (35 L. J. Chy., 671); Tudor's Leading Cases on Real Property, 360; Sugden on Real Property, 342, 343 ; *In re Sayer's Trusts* (36 L. J., 350 Chy.) ; 1 Jarman's Powell on Devises, 389, and notes; *Cadell* v. *Palmer* (1 Clark & Fin., 422) ; Lewis on Perp., 417, 418 ; *Proctor* v. *Bp. of Bath* (2 H. Bl., 362) ; *Dugannon* v. *Smith* (12 Cl. & Fin., 639, 640); *Knapping* v. *Tomlinson* (34 L. J., 11); *Brown* v. *Evans* (34 Barbour, 605); *Everitt* v. *Everitt* (29 Barbour, 118) ; *King* v. *Rundle* (15 Barbour, 145) ; *Yates* v. *Yates* (9 Barbour, 344 to 346) ; *Taylor* v. *Gould* (10 Barbour, 398); *Amory* v. *Lord* (5 Selden, 415) ; *Jennings* v. *Jennings* (3 Selden, 548); *Ludwig* v. *Combs* (1 Met. Ky., 131) ; see also *Goodman* v. *Goodright* (2 Burr., 870) ; *Bulley's Estate* (11 Jur. N. S., 791, 847); Johnson, J., in *Findlay* v. *King's Lessee* (3 Peters, 384) ; *Taylor* v. *Mason* (9 Wheat, 340, 341) ; 1 R. S., 723, §§ 14, 15, 36, 55, 63, 65.

Mrs. Schettler is entitled to the excess of income before her marriage, as being the person entitled to the next eventual estate. (1 R. S., 726, § 37; 1 R. S., 726, § 40; 1 R. S., 773 ; *Gilman* v. *Reddington,* 24 N. Y., 19; *Tregenwell* v.

*Sydenham*, 3 Den., 311; *Eden* v. *Wilson*, 4 H. L. Ca., 277); *Coster* v. *Lorillard*, 14 Wend., 306.)

*George F. Comstock*, for the respondent, cited Lewis on Perpetuities, 501, 502; *Beard* v. *Westcott* (5 Taunt., 393); *Longhead* v. *Phelps* (3 W. Bl., 704); *Crompe* v. *Barrow* (4 Ves., 681); *Savage* v. *Burnham* (17 N. Y., 561, 576); *Post* v. *Hover* (33 id., 593); *Darling* v. *Rogers* (24 Wend., 483).

GROVER, J. Some of the trusts created by the will of the testator in the present case are claimed to be invalid by the counsel for the appellant, upon the ground that the absolute power of alienation of the real estate is thereby suspended for a longer period than two lives in being at the death of the testator, and the absolute ownership of the personal property is also suspended for a longer period than two lives in being at that time. Section 15, 1 R. S., 723, provides that the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section. The latter section has no bearing upon the question in the present case. Section 1, page 773, 1 R. S., provides that the absolute ownership of personal property shall not be suspended by any limitation or condition whatever for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if such instrument be a will, for not more than two lives in being at the death of the testator. In determining the validity of limitation of estates, under the above statutes, it is, not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every

possible contingency, they will absolutely terminate at such period, or such estates will be held void. (Lewis on Perpetuities, 170; *Hawley* v. *James*, 16 Wend., 62, and cases cited.) Applying this rule to the trusts created by the third clause of the will in favor of the wife of the testator's son, John Jacob Smith, during her life, and the further trusts limited upon the termination of such life, they are void. The son was unmarried at the death of the testator. This clause gave one-fourth of the residue of the estate to the executors, in trust, to receive the income thereof and pay the same to the son during life, and on his decease, to pay the same to his wife during her life, and on her decease, if he leave a widow, or if he leave no widow, then, on his decease, to convey said one-fourth part to the issue of his said son then living; but in case said son should die without issue, then on the expiration of said life estates, to convey such fourth part to the issue then living of his other children, in the manner provided by the will. Now, it is clear, that the son might have married a woman born after the death of the testator, and consequently one not in being at the death of the testator, and that such woman might have survived the son; and in the happening of such events, the trust to pay the income to such woman, during her life, would not have terminated upon the death of two persons in being at the death of the testator; consequently the provision in favor of the son, and the further trusts to convey upon her decease might suspend the power of alienation of the real for a longer period than two lives in being at the creation of the estate, and also the absolute ownership of the personal property for a period longer than two lives in being at the death of the testator, and were therefore void. But it will be seen, that the clause of the will under consideration makes a disposition of this portion of the property in the alternative upon the happening of another series of events. That provision is: or if he (the son) leave no widow, then upon his (the son's decease) to convey as above provided. It will thus be seen, that in the contingency of the son's having no widow, the property is to

be conveyed to his issue upon his decease; that is, upon the termination of a single life in being at the death of the testator. Had this been the only direction as to the conveyance, it is clear that it would have been valid, as by no possibility could the power of alienation of the real and absolute ownership of the personal been suspended beyond the period allowed by statute. The son having died leaving no widow, the inquiry is, whether this lawful disposition is rendered invalid by the unlawful disposition attempted to be made in the contingency of his leaving a widow. It is difficult upon principle to see why it should. But for the prohibition of the statute, both dispositions would have been lawful and valid, and either would have taken effect according to the happening of the events giving it vitality. The statute comes in and avoids one of the dispositions, leaving the other unaffected by its provisions. Why should not the latter take effect upon the occurrence of the events, upon which it was made to depend. The authorities sustain its validity. Lewis on Perpetuities (501, 2), says, that where a limitation is made to take effect on two alternative events, one of which is too remote and the other valid as within the prescribed limits, although the gift is void so far as it depends on the remote event, it will be allowed to take effect on the happening of the alternative one. That is, in principle, precisely this case in this aspect, vide, *Crompe* v. *Barrow* (4 Vesey, 681); *Savage* v. *Burnham* (17 N. Y., 561). The trust to convey to the issue of John Jacob, the son, living at his decease, in case he left no widow, must be held valid. From the facts found, it appears that John Jacob died not only leaving no widow, but also without issue. Consequently the last mentioned trust in favor of his issue never became operative. In the events which have actually happened, the trust required the trustees to convey this portion of the estate on the expiration of said life estates to the issue of other children of the testator. It is insisted by the counsel for the appellant that this is void, as the conveyance to the latter issue is expressly made dependent upon the termination of said life estates, one of

which might have been that of a person not in being at the death of the testator. If this be the true construction, the counsel is right in his conclusion. We have already seen that to render the limitation valid, it must be such that it not only may, but must terminate within two lives in being. It is true, that the language used would, if read without reference to other parts of the clause, import that the only contingency upon which this conveyance was to be made, was the termination of the life estates of both the son and his wife; and if so, the limitation over would have been too remote, and therefore void, but the entire clause not only, but if necessary, the whole will must be examined to ascertain the intention of the testator; and if from such examination, the intention clearly appears, such construction must be put upon any particular language as will carry out the intention, if it will admit of that construction. In the present case, the testator provides, that if the son left no wife, then upon his death the trustees should convey to his issue; and if he left no issue, then upon the expiration of the life estates to convey to the issue of the other children, clearly indicating an intention, that in case the son left no wife, the conveyance to the issue of the other children should be made upon the happening of the event upon which it was to be made to his own issue if any, that is his death, leaving no wife. Adopting this construction, which I think the entire third clause shows was the intention of the testator, the alternative disposition to the issue of the other children was made dependent upon the same contingency as that of the conveyance to the issue of the son, if any, that is his death, leaving no wife. This renders the limitation in favor of the issue of the other children valid.

The only distinction between the third clause of the will and the fourth, in favor of the testator's son Lawrence, and his wife and issue, arises from the fact that Lawrence had a wife and issue living at the time of making the will, and also at the death of the testator, who are still living. The trust in this clause, was to receive the income and pay the same to

Lawrence during his life, and upon his decease to pay such income to his wife during her life, and on her decease, if he leave a widow, or if he leave no widow, then upon his decease to convey to his issue, &c. The question presented upon this portion of the will is, whether the gift of the income to the wife of Lawrence, was confined to his then wife; or in case of her death during the lifetime of Lawrence, and he should thereafter marry another woman, such woman would be entitled to take under the will. If the former, the trust is valid, as in that view, the power of alienation, and absolute ownership could not be suspended beyond the lives of two persons in being at the death of the testator. If the latter, it is invalid in respect to the life estate of the latter woman, as Lawrence might marry a woman not in being at the death of the testator. This would be too remote, and consequently the limitation in favor of such wife would be void, and the trust to convey to the issue of Lawrence, being limited in this aspect of the case, to take effect upon the termination of the life estate of such second wife, would be likewise void.

Lawrence having a wife at the time of making the will, and also at the death of the testator, the gift in the will to his wife would include his present wife only. That person is, by the term, just as plainly pointed out as the object of the testator's bounty, as though her name had been inserted, or she had been otherwise fully identified in the will. Had there been nothing further affecting this limitation, I should have found no difficulty in sustaining it. But there is added to this bequest to the wife of Lawrence, for life, the following: and on her decease, if he leave a widow, or, if he leave no widow, then, on his decease, to convey, &c., to his issue, &c. In another clause of the will, we find the testator making provision for the wife of a son not married. In the clause under consideration, the direction to convey to the issue, is not limited to the death of the wife of Lawrence, which we have seen would be applicable to his present wife only, but to the decease of his widow, if he left a widow, plainly including any wife that might survive him. This, I

think, was the intention of the testator, and such must be the construction of this portion of the will. This being so, it follows that the direction to convey to the issue upon the death of the widow of Lawrence, is too remote, and therefore void; and this, irrespective of the question, whether such widow was the present wife, or any other woman, whether born or unborn at the death of the testator, for the reason that such widow might possibly be the latter. Should, there- fore, Lawrence die, leaving a widow him surviving, the trust, to convey to his or the issue of the other children, being too remote and void, it would follow that the testator died intes- tate, as to this portion of his estate, and that it would be dis- posed of under the statutes provided for such cases. But should Lawrence have no widow at his death, then the alter- native disposition to convey upon his death, will be valid and effectual, as in the case of John Jacobs' portion.

No question as to the unlawful suspension of the power of alienation of the real, or of the ownership of the personal pro- perty, arises upon the fifth clause of the will. That suspension, in no contingency, could extend longer than the life of the testator's daughter, Cornelia, a single life in being. The only question arising upon this clause, is, whether this daughter, either as heir or legatee, has any interest in the income of the fourth of the residue of the estate disposed of by this clause, over and above what has been paid to her. No valid direction, for the accumulation of the income of this share, is given by the testator. By this (5th) clause, the one-fourth of the residue is given to the executors in trust, to receive the income thereof, and pay therefrom to the testators' daughter, Cornelia, $800 a year, quarterly, until her marriage; and upon her marriage with any person other than Frederick R. Schettler, or upon his decease, to pay to her all the income arising from the death of the testator. But, in case the daughter married Schettler, all her interest in the estate was to cease during the coverture, and the same, during such coverture, is given to the other children of the testator, and to the issue of such of them, as might have died. The daughter received the $800

as provided, from the death of the testator until she inter-married with said Schettler. After such marriage, she died, leaving him surviving, and leaving one child by him. Upon her death, this fourth is given to her issue by any husband other than Schettler, and in default of such issue, is given to the issue of other children of the testator. The income arising from this fourth, was the interest given to Cornelia, for her life, upon her marriage with a person other than Schettler, or upon his decease, together with any excess of income arising therefrom, after the death of the testator, over and above the $800, to be paid to the daughter until such marriage or death ; and this was the interest, that in case of her marriage with Schettler, was by the will declared, should pass to the other children of the testator, during the coverture of the daughter with Schettler, in case she married him. Upon this marriage, all the income arising from this fourth thereafter, belongs to the other children of the testator, and the issue, &c., under this clause of the will. Under the same, the other children and issue would take any excess of income that may have arisen prior to the marriage, unless the same is otherwise disposed of by the statute. We have seen that no valid direction for the accumulation of this income was given. The power of alienation of the real, and ownership of the personal estate, was suspended during the life of Cornelia. 1 R. S., 726, § 40, provides, that when in consequence of a valid limitation of an expectant estate, there shall be a sus-pense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undis-posed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons pre-sumptively entitled to the next eventual estate. The daugh-ter, Cornelia, was presumptively entitled to the next eventual estate in the income. This is given to her for life, upon her marriage with any person other than Schettler, or upon his death. It is given to no one else, until after it shall be determined, whether she marries Schettler. Under this statute, I think, the excess of the income, until the marriage

of Schettler, if any, belonged to Cornelia, and upon her death, vested in her administrator, the plaintiff. My conclusion is, that the judgment appealed from, should be modified, so as to declare the life estate of the widow of Lawrence void, and, also, the trust to convey to his issue, upon the death of his widow, void, as being too remote ; and, also, declaring that the plaintiff is entitled to recover the income, arising from the fourth of the estate, specified in the fifth clause of the will, until her marriage with Schettler, not already paid to her, or her legal representatives, and as so modified affirmed.

DANIELS, J.  The will of John M. Smith, the construction and effect of which are in controversy in this action was clearly intended to make a full and final disposition of all his estate both real and personal.  Its general tenor and meaning, as well as the particular provisions, devises and bequests made of his property, very clearly show that to have been the design and intent of the testator.  And this circumstance, therefore, must be prominently observed and considered in determining the effect of particular terms and phrases, which, standing by themselves, may not be entirely consistent with the execution of that purpose.  The rule upon this subject was stated by Lord MANSFIELD to be that " words of limitation shall operate as words of purchase, implications shall supply verbal omissions, the letter shall give way ; every inaccuracy of grammar, every impropriety of terms shall be corrected by the general meaning, if that be clear and manifest."  (*Chapman* v. *Broder*, 3 Burrow, 1626.)  And it was stated in terms of similar import by the chancellor, in deciding the case of *Pond* v. *Beigle* (10 Paige, 140, 152).  He there declared that " the intention of the testator, so far as it is consistent with the rules of law, must govern in the construction of a will.  When, therefore, the intention is apparent upon the whole will taken together, the court must give such a construction as to support the intent of the testator, even against strict grammatical rules.  And to effectuate his evident intention, words and limitations may be transposed, supplied or rejected."  (4

Kent, 7th ed., 595.) The observance of this principle is important in this case in view of the circumstance already referred to, that the will renders it entirely clear that the testator did not intend to die intestate as to any portion of his estate. This is manifest from the fact, that by means of it, he has endeavored to provide against every possible contingency that might be attended with that result. And that intention should be maintained by the construction given to the different clauses in the will, if that can practicably be done consistently with the language he has made use of in framing them.

The first of those clauses which are drawn in controversy in this cause, is that contained in the third subdivision of the will. And that clause is in the following words :

" 3d. I give, devise and bequeath one other equal fourth part or share of all said rest, residue and remainder of my estate, real and personal, to my executors, in trust, to receive the rents, issues, profits and income thereof, and pay the same to my son, John Jacob Smith, during his natural life, and on his decease, to pay the said rents, issues, profits and income to his wife, during her natural life, and on her decease, if he leave a widow; or, if he leave no widow, then, on his decease, to convey and transfer said one-fourth part or share, in fee, to the issue, then living, of my said son, John Jacob, *per stirpes ;* but in case the said John Jacob shall die without issue, then, on the expiration of said life estates, to convey and transfer said one-fourth part or share, in fee, to the issue then living of my son Lawrence, and the issue, then living, of my son Lafayette, by another than his present wife, and the issue, then living, of my daughter Cornelia, by a husband other than Frederick R. Schettler ; the issue entitled to take, taking *per stirpes.*"

By this clause, it was evidently the testator's design to dispose of one-fourth of the residue of his real and personal estate finally and effectually. His first object was to provide a life estate for his son, in the rents, issues, income and profits of it. And if he should leave a widow at the time of his

decease, to make a like provision in her behalf for the remaining portion of her natural life.    And afterward to dispose of the remainder absolutely.    This remainder was positively intended for the issue of his son, if he should leave any, and if he did not, then for the particularly designated issue of his brother and sister.    By the express terms made use of, it was to be conveyed and transferred at once to the issue of the testator's son, upon his decease, if he should die leaving such issue, but no surviving widow.    If he should leave neither issue nor widow, then it is insisted that the testator has so devised and bequeathed this portion of his estate, that it could not on his son's decease be lawfully transferred by the executors to the designated issue of his brothers and his sister.    And that is maintained to be the case on account of the testator's declaration that such issue should take the remainder " on the expiration of said life estates."    From these terms, it is claimed that he could only have intended that the final remainder should take effect after both the life estates had become actually vested in the respective life tenants and been enjoyed by them.    If that were the testator's design, then the remainder thus provided for would probably be unlawful, because the second life tenant might not be in existence at the time of the decease of the testator.    And if such life estate failed on account of its illegality, it would follow that the remainder, dependent upon it, would also fail for the same reason.    For the latter could not be maintained in the absence of the preceding estate, on the existence and determination of which, it was actually made to depend.

But no good reason can be supposed that could have induced the testator to render the final disposition of this remainder, actually dependent upon the vesting and enjoyment of the second life estate.    That would have been directly in conflict with the general scope and theory of his will.    For it would have rendered him intestate as to this remainder, in case the life estate should fail to take effect, and his son should die without issue.    And that he evidently intended to provide against.    The purpose he intended to promote by the

creation of the second life estate, was to secure his son's widow a support for the residue of her life, after his decease, which she would otherwise have been deprived of by the terms of the will during that time. It was a contingent disposition in favor of the widow, instead of an event necessarily designed to precede the final vesting of the remainder. And as such, if the estate should fail to take effect, on account of there being no widow, no legal obstacle could then stand in the way of giving full effect to that portion of the will relating to the remainder. And that from the terms made use of, and the contemplated relation of the parties, must have been the purpose which the testator intended to accomplish.

No reason can be supposed for rendering the remainder dependent upon any different event beyond that of the failure of the son's issue, in limiting it to the designated issue of the brothers and sister, than that on which it depended in the limitation to his issue. As his issue were intended to take it on the decease of the son, leaving no widow, and their's were to have it for want of issue on his part, there is no reason why the same event should not determine the right of their issue as well as that of his own to this remainder. It was to be conveyed and transferred to them on his failure to leave issue to receive it, not because the life estate, provided for the contingent widow, had taken effect and been enjoyed by her. And whenever that event transpired, their right to the property manifestly became perfect. That was the reasonable import of the language used by the testator. For the life estate secondly provided for, was contingent upon the survivorship of the life tenant. In case there should be no such survivorship, then on the decease of the son his issue were to receive the property, and if he should die without issue then living, then on the expiration of the life estates, in the manner previously designated, the final devisees and legatees were to have it. When the testator used the terms, "on the expiration of the said life estates," in the connection in which he employed them, he must have had in his mind the provi-

sions just made concerning them, and must, therefore, be deemed to have used them in reference to those provisions. And in doing so, necessarily intended to be understood as referring to the manner in which he had previously contemplated the cessation or termination of such life estates. And as one was rendered contingent upon the survivorship of his son's widow, it necessarily expired on his decease, without leaving a widow. That was a perfectly proper use of the term employed, and from the connection in which it is found, it is apparent that the testator used it in that sense. When his son died without leaving a widow, as he did, both the life estates expired by that event. The one by the consummation of its enjoyment, the other by the contingency failing, on which alone it could take effect. The object of the testator in both respects was then fully accomplished, and as his son left no issue, there was nothing to prevent the issue of the brothers and sisters from taking the property. This issue was authorized to receive it by the terms made use of in this clause, as soon as the testator's son died without leaving a surviving widow, or issue, and as both those contingencies were necessarily determinable immediately upon his decease, no unlawful suspension of the power of alienation, or of absolute ownership, could be produced by that disposition of the remainder. That limitation was perfectly valid, even though in the event of the other contemplated contingency, that of the son leaving a widow, to whom the second life estate was unlawfully limited, it might have proved to have been otherwise. Two distinct and independent limitations were provided for the final vesting of the remainder. One dependent upon an event allowed by law, the other upon an event falling within the statutory prohibition. The former being valid, could no more be impaired by the latter than it would have been if the latter had been entirely omitted by the testator. For it was in no way or manner rendered dependent upon the limitation which it was declared should succeed the second life estate in the contingency, that the son died leaving a widow surviving him. In such cases it is well

settled, that the limitation lawfully made, shall be sustained, even though that depending upon the other contingency may be altogether inoperative and void. (*Savage* v. *Burnham*, 17 N. Y., 561, 576, 577; *Post* v. *Hover*, 33 id., 593, 598; 1 Jarman on Wills, 3 Am. Ed., 269–70; Lewis on Perpetuities, 501–2.)

The testator's son was never married, and, consequently, left neither issue nor widow living at his decease. The final remainder, therefore, took effect upon the occurrence of that event. It is unnecessary to consider further the validity of the other limitation in this connection, since that is not practically involved in the construction of this part of the will.

The fourth division of the testator's will in a similar manner disposed of another fourth part of his estate in favor of his son Lawrence. By that clause, the issue will take this portion of the estate, in case he shall die without leaving a surviving widow. If he does, and still leaves no issue, then it was provided that the issue, at that time living, of the testator's sons, John Jacob, and of Lafayette, by a wife other than the one he then had, and of Cornelia, by a husband other than the plaintiff, should take, in fee, that portion of his property. This was a legal disposition of that part of the testator's estate. And for the reasons already stated in discussing the preceding portion of the will, no obstacle can exist that will prevent the fee from becoming finally vested under it, if Lawrence shall die leaving no widow.

But if, at the time of his decease, he shall leave a widow surviving him, then, on the happening of that event, the estate cannot, according to the terms of the will, go to his issue, or, if he shall leave none, to the issue of his brothers and sister, until after the actual expiration of his widow's life estate in the rents, income and profits of this share of the testator's property. In that event, the final vesting of the will is rendered dependent upon the previous expiration of the widow's life estate. This life estate was not exclusively provided for the wife he had or might have at the time when the will went into effect; but it was provided for any wife

he might have who should survive him as his widow; and as that might be a person not in being when the will went into effect, the existence of that estate may suspend the power of alienation, and of absolute ownership of the property beyond the duration of two lives in being, when the will took effect. There is certainly a possibility of that being the case; and that is sufficient to render the life estate, provided for the widow, invalid, and the ultimate limitation dependent upon it, in favor of the issue equally so. If the life estate fails, of course the remainder, made dependent, and which it is provided shall take effect upon its termination, must also fail with it; for the event can never, in that view of the case, arise upon which the remainder was to become vested. (*Hawley* v. *James*, 16 Wend., 62; Lewis, on Perpetuities, 170; *Thompson* v. *Carmichael*, 1 Sand. Chy., 394; *Lett* v. *Randall*, 3 Smale & Gifford's Rep'ts, 83; *Hodson* v. *Ball*, 14 Simons, 558, 574.)

That section of the statute which provides that where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled shall be void; and upon the death of those persons the remainder shall take effect in the same manner as though no other life estates had been allotted, was relied upon at the argument for the purpose of avoiding this consequence. But that section of the statute very evidently can have no such effect; for, by its terms, it is rendered applicable only to that class of cases where more than two successive life estates are provided for to precede the final vesting of the remainder. (3 R. S., 5th ed., 11, § 17.) In the present instance no such provision was made; for it was provided that the vesting of the remainder should not be postponed beyond the termination of the second successive life estate. This provision of the statute has nothing to do with the present controversy.

The consequence of the failure of the remainder in case Lawrence shall leave a widow surviving him, will be that this portion of the testator's estate must in that event follow the

ordinary course of descent provided by law. As to that remainder, the testator in that case will be intestate. And the child of Cornelia will be entitled to inherit it in the place of her mother in common with the other heirs of the testator.

The plaintiff, as the administrator of the testator's daughter Cornelia, is plainly entitled to nothing from the rents, issues, income and profits of his estate; for, by the will, it was not only provided that in case of her marriage with the plaintiff, and her decease without issue by a different husband, that the one-fourth of the testator's estate otherwise provided for her and such issue, should be conveyed and transferred in fee, to the issue mentioned of John J., Lawrence S. and Lafayette; but beyond that, all her interest in the estate should thereupon cease during such coverture, and that the same during such coverture should pass to the testator's other children then living, and the issue of such as should be dead.

If she had survived her husband, the case in this respect would have been different. But as she did not, neither he nor her issue can lawfully recover any portion of the rents and profits of this part of the testator's estate, under the terms of his will relating to it.

The judgment should be so far modified as to declare the right of the issue of Cornelia to inherit by descent with the other heirs of the testator, that portion of his estate devised and bequeathed to the issue of Lawrence S., and of the other of the testator's children, if he should die without issue, in case he shall leave a widow surviving him at the time of his decease. And as so modified, the judgment should be affirmed without costs of the appeal to either party.

WOODRUFF, MASON, JAMES and MURRAY, JJ., concur in the results to which GROVER, J., arrived in his opinion.

LOTT, J., concurred with DANIELS, J., as to the surplus income from Cornelia's one-fourth.

HUNT, Ch. J., was for affirmance.

Judgment below modified by declaring, in the event of the death of Lawrence Shuster Smith, leaving a widow, the trust

to pay the rents and profits to such widow void, and the limitation over upon her death void, and that the testator will have died intestate as to the remainder of that one-fourth of testator's property upon the death of Lawrence, and the judgment below also modified by adjudging the plaintiff as representative of Cornelia entitled to recover the excess of the income of the one-fourth of the property, over and above the $800 a year paid to Cornelia, during the period before her marriage.

As so modified, judgment affirmed, costs of both parties in this court and the court below to be paid from the estate.