BARTLETT, J.
The controversy in this case arises out of á trust of $4,000, established by the will of Catharine E. Sinclair. In’order to understand the questions to be considered it is essential to set out the trust clause in full. It is in these words:
“ I give and bequeath to A. Smith Ring and Cornelia S. Fenton,1 the sum of four thousand dollars upon the following trusts, viz.: To invest the same and keep the same invested upon bond anct mortgage upon real estate, during the lives of my son, Hyatt Sinclair,'and his wife, and of the survivor of them, and to pay over the interest and income thereof, as they shall receive the same, to *727 •my said son, Hyatt Sinclair, daring his natural life, for the support of himself and his family. And in case said Hyatt Sinclair shall die leaving his wife surviving him, then and from that tima I direct the said trustees to pay the interest accruing from said, fund to the widow of my said son, for the benefit of herself and her children, as long as she shall live and remain the widow of my said son. At and upon the death or marriage of the widow of my said son, whichever shall first happen, or upon the death of my said son, if his wife shall not survive him, I give and bequeath the said principal sum of four thousand dollars to the children then living of my said son, Hyatt Sinclair, to be paid to them in equal shares upon their respectively attaining the age of twenty-one years. And in case no child of my said son, Hyatt Sinclair, shall be living at the time above appointed for the distribution of the said principal sum, then and in such case I give the said principal sum of four thousand dollars to my two daughters, Cornelia ■S. Fenton and Kitty R. Wood, to be equally divided between them. And in case either of my said children be than dead, without leaving children living, then the share of the one so dying shall be paid to my surviving child or children. ”
Catharine E. Sinclair, the testatrix, died in August, 1868. The ■executors, A. Smith Ring and Cornelia S. Fenton, qualified in the following September. At the time when the will was made and proved the wife of Hyatt Sinclair was Zelia B. Sinclair. They were divorced on March 22, 1879. Hyatt Sinclair subsequently married Sarah J. Haight, and died on April 7, 1888, leaving her •surviving him. She is still living. His first wife, Zelia B- Sin'dair, also survived him, but is now deceased, having died on January 10, 1890. The plaintiffs are the children of Hyatt and .‘Zelia B. Sinclair. Cornelia S. Fenton and A. Smith Ring, the trustees of the $4,000 fund, are both dead. Mrs. Fenton died first. The defendant is the executor of A. Smith Ring, and is ■sued for the amount of the trust fund, which his decedent, as solo surviving trustee, is alleged to have received under the will of Catharine E. Sinclair.
The first objection urged against the right of the plaintiffs to recover is that the testatrix died intestate as to the $4,000 trust fund in question. The plaintiffs sue as beneficiaries under the will, claiming to be entitled to the $4,000 in remainder. The appellant contends that they are not beneficiaries under the will at all. This was not his original position. In the brief used at the time of the oral argument, it was expressly conceded that the plaintiffs were to take the money, by the terms of the will, on the death of the widow of Hyatt Sinclair; and the contention was that the widow intended was the second, instead of the first, Mrs. Hyatt Sinclair, and, as the second Mrs. Hyatt Sinclair was still alive, the time of payment had not arrived. In the additional points for the appellant, submitted subsequently by leave of the court, his modified proposition appears to be that the time for payment to the plaintiffs, as beneficiaries of the $4,000 trust Sund, will never arrive, although they may ultimately receive some part of it, when it comes to be distributed as a portion of *728 Mrs. Sinclair’s property which she did not dispose of by her will. The argument by which it is sought to reach this result may be briefly stated thus: Conceding that the word “wife,” wliereever used in the trust clause, means the person who was the wife-of Hyatt Sinclair at the time testatrix died, nevertheless the word “widow” in the sentence beginning, “At and upon the death or marriage of the widow of my said son,” means any widow. If this be so, the argument continues, the limitation to the children to take effect on the death of the widow was void, under the rule-laid down in Schettler v. Smith, 41 N. Y. 328; while the alternative limitation, “or upon the death of my said son, if his wife-shall not survive him,” never took effect, because the wife Zelia did survive her husband. In this ingenious manner the learned-counsel for the appellant have worked out a case of intestacy as. to the $4,000 fund.
But the vice of the argument lies in the assumption as to th& meaning of the word “widow” in the will. In Schettler v. Smith, supra, the direction in the will was to convey, “on her decease, if he leave a widow, or, if he leave no widow, then on his dicease, —referring to a son of the testator. This provision, in connection, with other clauses of the instrument was construed to refer to any wife the son might subsequently marry, though possibly not in being at the time of the testator’s death, and hence the clause was-adjudged to be void. The words “a widow” and no widow,” however, are much more general in their scope than the expression “the widow of my said son,” in the will before us here. Furthermore, in the Schettler Case another portion of the will was mentioned, in the opinion of Judge Grover, as indicating an intention to make the direction to convey dependant upon the death of any person who might become the son’s widow. This was a clause making'prcmsion for the wife of a son not yet married. There is-nothing of the kind in the will of Mrs. Sinclair from which it can be inferred that she had in mind any other person than her son’s, first wife, when she referred to his widow. Taking the whole-trust clause together, it seems to me clear that, whether she -spoke-of the wife or the widow of her son, she meant Zelia B. Sinclair, who was his wife at the time the will was made. There is nothing in the language of the will anywhere to suggest that the testatrix ever contemplated that her son might enter into any other-marriage than that which then existed. To construe the word “widow” as applicable to any widow is to invalidate a provision of the will which is perfectly good, if it applies only to the first wife;, and this, of itself, would' seem to be reason enough for adopting the latter interpretation.
A.n English case, cited in behalf of the appellant, as In re Lyne’s-Trust, L. R. 8 Eq. 65. There the testator bequeathed a fund to-trustees to invest and pay the dividends to his son for life, and after his son’s death to divide the principal equally between the-wife of his said son, in case she should happen to survive him, and all his son’s lawful children. At the date of the will the son had a wife and child. The wife died, and the son married a second-time. This second wife survived him, and the question was *729 whether she was entitled to a share in the principal of the trust-fund. "Vice Chancellor Malins held that she was so entitled, declaring that there was quite as much to be said in favor of the intention being to benefit a future as an exisiting wife. But I do-not think this decision should have much weight as an authority. The master of the rolls (Sir George Jesse!) declined to follow it in Firth v. Fielden, 22 Wkly. Rep. 622, where, under a similar testamentary provision, he held that the gift over was confined to the wife who was alive at the date of the will, and did not go to a second wife who survived the original beneficiary. Furthermore, the vice chancellor, in his opinion in Dyne’s Case, virtually admitted that his conclusion was the merest guesswork when he wrote:
“It is impossible to say what the testator would have done if he had been asked whether he intended any future wife to take.
The second objection of the appellant to the right of the plaintiffs to maintain this action is that, under the fourth article of the will of Mrs. Sinclair, her son-in-law, John B. J. Fenton, was appointed trustee to succeed Mr. Bing and Mrs. Fenton, in the event, of their death; and as both have died, Mr. Fenton has become the sole trustee, and no recovery can be had, except in a suit to which he shall be a party. A sufficient answer to this point is that, the trust under the first article having"terminated, as has been shown, upon the death of Zelia B. Sinclair, there was no longer any trust, for a new trustee to discharge under that clause, and to that extent the appointment of Mr. Fenton was inoperative.
The third point upon which the appellant relies is that the evidence was insufficient to charge his decedent, A. Smith Bing, with liability for any portion of the trust fund of $4,000". The-plaintiffs proved that on October 28, 1869, an account of.the proceedings of A. Smith Bing and Cornelia S. Fenton, as executors-of the will of Catharine E. Sinclair, was presented to the surrogate’s court in Orange county, in which account the executors,, over their signatures and under oath, credited themselves with $4,000, “invested in name of A. Smith Bing and Cornelia S. Fen-ton, trustees of Hyatt Sinclair and his wife.” On the same day the surrogate made a decree settling their account, and allowing-them a credit of $4,000 for this investment. There was also put, in evidence a mortgage by one Faulkner to A. Smith Bing and Cornelia S. Fenton, trustees of Hyatt Sinclair, to secure the pajrrnent of $1,500. This mortgage was dated October 25, 1869. Here was ample proof to warrant the inference that the trustees had received the trust fund. They acknowledged its receipt by their sworn account, and the mortgage indicated where $1,500 of the money had been invested.
As opposed to this there is the testimony of John B, J. Fenton, the husband of Cornelia S. Fenton, one of the trustees. He was an attorney, and appears to have acted for his wife and Mr. Bing in reference to the estate of Mrs. Sinclair. He prepared the account-which was presented to the surrogate’s court. He swears that, when it was made out and filed, neither the trust fund of $4,000 *730 •nor any part of it was invested in the names of the trustees undeh the will; that the allegation in the account to that effect was untrue; and that A. Smith Ring never had in his possession or under 'his pontrol the said $4,000, or any part of it, ór any security! for it. , The same witness testifies that he took the account to' A. Smith Ring, who signed it without reading it, though he probably asked whether the papers were right. He also thinks it probable that the jurat was signed by the then county judge, to whom the witness took the papers, without Mr. Ring having gone before that magistrate. So much for Mr. Ring’s action in regard to the trust fund. To explain the action of the other trustee, the wife of the witness, Mr. Fenton said that the greater part of the $4,000 had been paid to Hyatt Sinclair before the testatrix died, and at her request; that Hyatt Sinclair felt unpleasantly in regard to his mother’s will; that the wife of the witness wanted him to pursue the same course as though the executors actually had the $4,000 to invest; and that, hence, it came to be put into the account.
I.do not think the trial judge was bound to believe the statements of this attorney, as against the evidence furnished by the -documents already mentioned. The witness admitted that he had been engaged in a deceitful course of conduct, by putting upon the records of the surrogate’s court statements, prepared by him■self, which he says he knew to be untrue, and which purported to be verified, although his recollection now is that the certificate that they had been sworn to was also false. These admissions were enough to discredit him. No explanation was offered of the taking by the trustees of the Falkner mortgage of $1,500, in which they were expressly designated as trustees of Hyatt Sin-clair. It did appear that, in the early part of 1870, they had assigned this mortgage to one William E. Peck; but why it was thus assigned, or for what consideration, was not disclosed. It is -extremely unlikely that this matter would have been allowed to ■go unexplained, unless it were true that the mortgage represented the investment of a part of the trust fund. Indeed, the testimony of Mr. Fenton tended to prove, rather than disprove, Mr. Ring’s liability for the loss of the $4,000. It indicated that he ■did not exercise any care or diligence whatever in respect to the joint trust, but delivered over the whole management to others,! with complete indifference to the interest of the beneficiaries.! This made him responsible to them for the loss of the fund. Earle v. Earle, 93 N. Y. 104, 113. Even if Mrs. Fenton did notj have $4,000 with which to constitute the trust fund, as Mr. Fenton declares was the case, the husband admits that he owed! the Sinclair estate $5,000 at the time; and an effort on the part! -of Mr. Ring to collect that debt, and thus provide for the trust,, might well have been successful, if he had attended to his duties; •as trustee, instead of grossly neglecting them. It is true, Mrq Fenton says his own financial circumstances were such that the: amount could not have been collected from him by' legal proceedings; but this statement is qualified by the. fact that he appears, on March 25, 1870, with his wife as the co-grantee, in a *731 deed of Eewburgh property, where the consideration recited is :$17,000, subject to a mortgage of $4,000. This does not look like insolvency.
Bat, without regard to this view of the evidence given by Mr. Fenton, I think the liability of Mr. Bing was clearly made out. The account in the surrogate’s court was proof of the receipt and joint possession of the trust money by both trustees. Glacius v. Fogel, 88 N. Y. 434, 443. Upon the death of one of these trustees (Mrs. Fenton), it was the duty of the survivor (Mr. Bing) to take sole possession of the fund, and the presumption is that he perforhied his duty, and did so, in which event his executor must respond for the amount.
The result of this examination of the case is the conclusion "that it was properly disposed of on the merits, and without legal ■error, in the court below. I can see no reason, however, why the ■defendant should not be allowed the trustee’s commissions, to be ■deducted from the amount of the judgment. With this modification, I am in favor of affirmance.
All concur.