In the Matter of the Estate of BANNED FRIEND, Deceased.

Surrogate's Court, New York County, July 16, 1938.

*William M. Silverman,* for Milton Rogers, remainderman, petitioner.

*Battle, Levy, Fowler & Neaman [Ludlow S. Fowler* and *Thomas Stokes* of counsel], for the respondents Emma Friend and Celia Friend.

*Benjamin Esberg,* for Joshua Kantrowitz, trustee.

*Pfeiffer & Crames [Alexander Pfeiffer* of counsel], for Martha Simon and Estelle Berman, respondents.

*Edelman & Edelman,* for the committee of Annie Ratkowsky, petitioner.

*Gronich & Gronich,* for Isidor Friend, trustee.

FOLEY, S. Various further questions of construction requiring determination have been raised in this consolidated accounting proceeding. The testator made his will on May 26, 1925. He died on June 30, 1932. He left him surviving two daughters, Annie Ratkowsky and Martha Simon, and two sons, Sol Friend and Ike Friend, as his next of kin. On July 2, 1933, Sol Friend died, without issue. Shortly thereafter, on July 10, 1933, Ike Friend

died, without issue. Each left a wife who was living at the date of the execution of the will.

The testator disposed of his entire residuary estate by paragraph fourteenth of his will. He provided as follows: " All the rest, residue and remainder of my estate, * * * I give, devise and bequeath unto my Executors hereinafter named, * * * in trust, * * * to collect and receive the rents, issues, interest and income thereof, and I direct my said Executors to divide such residuary estate into four equal parts, and I dispose of the same as follows:"

Under subdivision (a) of paragraph fourteenth, the testator gave one of such equal parts to his executors, in trust, to apply the net income for the use and benefit of his son, Sol Friend, during his natural life, and then provided: " upon the death of my said son Sol Friend, I direct my said Executors to divide the principal thereof into as many equal parts as there are children of my said son Sol Friend, him surviving, and I give, devise and bequeath one of such equal shares or parts to each of the said children of my son Sol, him surviving *per stirpes* and not *per capita*, equally share and share alike. Should my said son Sol die without leaving issue him surviving, then and in that event, I direct my said Executors to divide the principal of the trust fund in this subdivision created, into two equal shares or parts, and I direct that one of such shares or parts shall revert to and form part of my residuary estate, and I direct my said Executors to apply the rents, issues, interest and income of the remaining one-half share or part to and for the use and benefit of the widow of my said son Sol, for and during the term of her natural life, or until she remarries, and upon the happening of either event, the said remaining one-half share or part shall revert to and become part of my residuary estate."

Under subdivision (b) of paragraph fourteenth, he gave an equal share of the residuary estate to his executors, in trust, to pay the income for the use and benefit of his daughter, Martha Simon, for life and upon her death directed that his executors " divide the principal thereof into as many equal parts as there are children of my said daughter Martha Simon her surviving, and I give, devise and bequeath one of such equal shares or parts to each of the said children of my daughter Martha Simon, her surviving, *per stirpes* and not *per capita*, equally share and share alike."

Under subdivision (c) of paragraph fourteenth, in language identical to that contained in subdivision (a), he created a similar trust for the use and benefit of his son, Ike Friend, and similar provisions for the disposition of the principal upon the latter's death.

Under subdivision (d) of paragraph fourteenth, he gave an equal one-fourth share of his residuary estate to his executors, in trust, to apply the net income for the benefit of his daughter, Annie Ratkowsky, during her natural life, and upon her death, in trust, for the benefit of her issue until they severally arrived at the age of twenty-one years, with remainders over.

(1) The first question requiring determination relates to the proper construction and effect to be given to the use by the testator in paragraph fourteenth, subdivisions (a) and (c), of the words " the widow of my said son Sol," and " the widow of my said son Ike." As stated above, both sons died shortly after the testator survived by their respective wives. Did he intend, by these expresssions, the existing wives of his sons at the date of the execution of his will, or did he intend to include any subsequent wife of either of his sons who might be living at their respective deaths, and who might not have been in existence at the time of his own death? In the latter event, of course, an invalid suspension under the statute would result.

It has been generally held in this State that a gift to a " wife " of a legatee or beneficiary is a gift to one who occupies that relation at the making of the will, while a gift to the " widow " of a designated person is a gift to the lawful widow who may survive him. (*Schettler* v. *Smith*, 41 N. Y. 328; *Van Brunt* v. *Van Brunt*, 111 id. 178; *Meeker* v. *Draffen*, 201 id. 205; *Williams* v. *Alt*, 226 id. 283; *Davis* v. *Kerr*, 3 App. Div. 322; *Man* v. *Man*, 197 id. 547; *Matter of Tuck*, 165 Misc. 346.) This general rule has been applied where no contrary intent was found in the context of the will, either expressly or impliedly, or was disclosed by the facts and circumstances surrounding the execution of the will. There appears, however, to be no arbitrary rule that the word " widow " necessarily denotes a wife who shall survive a legatee or beneficiary, to the exclusion of a wife who was such at the time of the making of the will. Those cases in which the general rule was applied must be held to have been determined under the distinctive language of the particular will and in accordance with the surrounding circumstances.

The courts of Connecticut and Pennsylvania have sustained a gift to a " widow," where the circumstances warranted it, as a gift to the wife living at the date of the execution of a will. (*Beers* v. *Narramore*, 61 Conn. 13; 22 A. 1061; *Anshutz* v. *Miller*, 81 Penn. St. 212; *Matter of Solms*, 253 id. 293; 98 A. 596.) In each of these cases the courts held that since a " wife " was in being at the time of the execution of the will to whom the description of " widow " would apply, she was intended as the beneficiary. In *Beers* v. *Narramore* (*supra*), where there was a trust for the testator's son

for life and on his death the income was given "one-third to his widow so long as she shall remain unmarried," the court said: "we think the testator meant the same as if, instead of 'widow,' he had said, 'wife of Frank, if she survives him,' and that the latter is fully an equivalent expression. Had this term been used, as there was then *in esse* a person fully answering to that description, and only one, such person must be understood as intended, although it is indeed possible that this person might die, and another person might afterwards, at a remote date, as suggested, be born, who in another generation, might come to answer the same description. Suppose the language used had referred to the 'son' of Frank, and at the time there was a son and only one, could it be successfully claimed that the testator did not mean to identify a certain individual, but to give either entirely to one, or to divide among many of Frank's male issue thereafter born? It is quite evident from the whole will that the testator was all along and throughout thinking of living persons whenever expressing any specific purpose."

In *Anshutz* v. *Miller* (*supra*) the testator gave to one John P. Anshutz the income from his estate as long as he should live, and provided that after his death "his widow is entitled to said income." The court held that "his widow" referred to the wife of the beneficiary living at the date of the will and not to any wife who might survive him. It argued: " Can the intention be gathered from the will that the remainder to the widow was to be dependent on the relation which any wife of Anshutz should bear to him? Mrs. Anshutz was in full life when the will was made. She was the testator's niece. Surviving her husband, she would be his widow. Could the testator possibly have had in view any other wife of the husband of his niece, for whom it was his purpose to provide? Where an estate is given to a person described by relation either to the testator or to other devisees, on a contingency that may or may not happen, and a person is in being at the time of the execution of the will, to whom, on the happening of the contingency, the description would apply, it is a safe general rule to hold such person as intended to be the devisee."

A similar determination was made in *Matter of Solms* (*supra*), where the income of a trust fund was bequeathed to the grantor's son for life and upon the son's death the trustees were directed to pay the income and interest to the "widow" of the son.

There is sufficient competent evidence in this proceeding to show generally an attitude on the part of the testator of solicitude for his daughters-in-law. When he wrote his will his sons had been married to them for a number of years. Sol was at that time forty-nine years of age; Ike was forty-five. Their wives were well

known to the testator. To some extent they had been dependent upon him for support. The marriages of his sons having occurred late in life, it is extremely unlikely that the testator had in mind possible divorces of his sons, or their remarriages to other women. It is quite evident from a reading of the whole will that the testator was thinking of living persons when he referred to the " widows " of his sons. He made no provision for the contingency of the deaths of the wives of Sol and Ike before them.

In *Fell* v. *McCready* (236 App. Div. 390, at p. 395) the Appellate Division, in laying down certain underlying and fundamental rules governing the construction of testamentary dispositions, said: " While the will must speak for itself, and the intention of the author must be gathered from the instrument, the court, in order to understand better and interpret the language of the testator, should, so far as possible, place itself in his position at the time he executed the will, and take into consideration all the surrounding facts and circumstances, including his family relations, the state of his property, the purpose of the instrument, and the motives which might reasonably be supposed to have influenced him in the disposition of his property. (*Walker* v. *Walker*, 283 Ill. 11, 18; *Wardner* v. *Baptist Memorial Board*, 232 id. 606, 611; *March* v. *March*, 186 N. Y. 99, 103; *Lytle* v. *Beveridge*, 58 id. 592, 598.)"

Applying these rules to the situation existent here, I hold, upon all the circumstances, and particularly in view of the fact that each of the testator's sons had a wife living at the date of the execution of the will, that these wives were " within his knowledge and thoughts " at that time, and were the intended beneficiaries of the secondary life estates created under subdivisions (a) and (c) of paragraph fourteenth. (*Van Brunt* v. *Van Brunt, supra.*)

My determination here is consistent, moreover, with the general rule that where a will is susceptible of two interpretations, one of which would render it valid and the other invalid, the presumption is that a valid disposition was intended. An intention to use the word " widow " in a sense which would result in invalidity should not be attributed to the testator if a more reasonable indication which would sustain the validity of the provisions of the will may fairly be inferred. Certainly, the secondary life estates may be saved for the widows of Sol and Ike without in any way doing violence to the language used by the testator.

(2) The further questions raised involve the provisions of subdivisions (a) and (c) of paragraph fourteenth of the will in so far as they affect the disposition of the principals of the trusts created for the testator's sons, Sol and Ike, upon their respective deaths. Under the terms of the will, upon their deaths each trust was

directed to be divided equally between their respective surviving children. If they left none, one-half of each trust was to "revert to and form part of my residuary estate." The other one-half of each trust was directed to be held in further trust for the respective widows of the testator's sons. Upon the death of each widow, or her remarriage, the one-half held in trust for her also was directed to "revert to and become part of his residuary estate." The primary trusts of equal one-fourth shares of the residuary estate were unquestionably valid for the lives of the sons, Sol and Ike. By my determination that their respective wives were the specific persons designated by the testator as their widows, one-half of each such trust must be sustained as valid for the life of each widow or until her remarriage. Since neither Sol nor Ike left children them surviving, upon the death of Sol, who died first, one-half of the principal of his trust became distributable in accordance with the terms of the residuary clause of the will, and must be added in equal subshares to the trusts created by the will for the testator's son Ike, and his daughters, Martha Simon and Annie Ratkowsky, to be held for the secondary lives of these children. It is contended that the testator having originally divided his estate into four equal parts, one for each of his children, the one-half part of the principal of Sol's trust which reverted to the residuary estate should again be added to the share which was held in trust for Sol during his lifetime. I cannot agree with this contention. While the will was loosely and inartificially drawn, the fair and reasonable intention of the testator is clearly discernible and should be given full force and effect. The reasonable and logical construction compels the determination that the testator contemplated the division of the share reverting to the residuary estate among the surviving children and the addition of the subshares, after division, to the trusts created for them. That construction was adopted by GUY, J., in *Boynton* v. *Lahens* (81 Misc. 352), where the language was somewhat similar to the will here. There the will directed that the share of the residuary estate set apart, in trust, for a child of the testatrix should be disposed of as such child might direct by his will and failing such disposition " then I direct that such share shall fall into my residuary estate and be distributed as hereinbefore provided." The residuary estate was comprised of five equal trusts for the children of the testatrix. One of the children died, intestate, married and without issue. Justice GUY held: " The testatrix intended, and I see no legal difficulty in the carrying out of such intention, that in the event of the death of any child without issue surviving and without disposing of its share by will, the share of such child should be

divided into as many subshares as there were children then surviving, which subshares should be added to and form a part of each of the subsisting trusts."

The same reasoning would seem to be applicable to the will under consideration in this estate. The dominant purpose of the testator here was plainly to benefit those children who survived the termination of the trusts.

I accordingly hold as follows: (a) Upon the death of Sol, one-half of the original share of the residuary estate theretofore held in trust for his life became divisible into three equal subshares and one such subshare should be added to each of the shares directed to be held in trust for the testator's children, Ike Friend, Martha Simon and Annie Ratkowsky, for their respective lives; (b) upon the death of Ike, one-half of the original share theretofore held in trust for him became divisible into two equal subshares and one of such subshares should be added to each of the shares of the principal held in trust for his sisters, Martha Simon and Annie Ratkowsky; (c) the subshare, which upon the death of Sol became part of the principal of the trust for the benefit of Ike, having been held for two successive lives, cannot be further suspended for additional lives; nor can it be accelerated so as to presently vest the remainders, since under the terms of the will the remainders are clearly contingent. (*Matter of Silsby*, 229 N. Y. 396.) The language of the will made survivorship at the termination of the trusts a condition of the vesting of the remainders in the children of the testator's children. Such subshare, therefore, passes as intestate property in equal parts to the two daughters of the testator and to the executors of the estates of his deceased sons; (d) upon the deaths of the respective widows of Sol and Ike, or their remarriages, the principals of the shares held in trust for them cannot be further suspended for additional third lives, and since the remainders are contingent such shares also pass to the persons entitled to take as in intestacy.

Submit intermediate decree construing the will on notice accordingly.