In the Matter of the Estate of MARY ANN FITZGERALD, Deceased.

Surrogate's Court, New York County, January 12, 1942.

*Dwight & Scoville*, for the petitioner.

*Thomas F. Hyland* [*William H. Daly* and *Thomas F. Hyland* of counsel], for Gwendolyn Curran, respondent.

*Barr, Robbins & Palmer* [*Robert S. Buttles* of counsel], for St. Luke's Hospital, respondent.

FOLEY, S. In this accounting proceeding the trustee seeks construction of that portion of decedent's will which relates to the annuity for the benefit of William G. Curran. In article sixth (§ 1, subd. 2) the testatrix created several trusts. From one of the trusts so created, she directed her trustees " to pay the yearly sum of Two thousand and forty dollars ($2,040) to William G. Curran, if he be in my employ at the time of my death. in equal monthly payments of one hundred seventy dollars ($170) each month so long as he shall live, and after his death to his wife in equal monthly payments until her death or remarriage, whichever event shall occur first." Any surplus income during the continuance of the trust was payable to St. Luke's Hospital, which was also the remainderman of the trust.

The single issue is whether decedent by the use of the words " his wife " intended to designate Marguerite Curran who was then his wife, or whether Gwendolyn Curran whom he married almost fourteen years after decedent's death is entitled to receive the monthly payments directed to be made " after his death to his wife."

The will had been executed by decedent on February 18, 1927. At that time William G. Curran was married, and his wife, Marguerite Curran, was well known to decedent. On April 30, 1927, decedent died. Thereafter the annuity was paid to William G. Curran as directed in the will. Marguerite Curran obtained a decree of divorce from William Curran on March 7, 1939. In less than a month she married again. William G. Curran remained single until April 5, 1941, when he married Gwendolyn Holliday. He died June 25, 1941.

It is conceded that because of her remarriage, the first wife of William Curran can have no interest in the annuity. She makes no claim here. Gwendolyn Curran, his second wife, contends that since she was his wife at the time of his death, she is entitled to be paid the annuity until her death or remarriage. On the other hand, the remainderman seeks payment to it of the corpus of the fund on the theory that the trust has terminated.

The surrogate holds that by the use of the word " wife," the testatrix intended to refer to Marguerite Curran who answered that description at the date of the execution of the will, and that the trust terminated on the death of William Curran by reason of the remarriage of Marguerite Curran prior to that date.

In *Matter of Friend* (168 Misc. 607, 610) I had occasion to restate the well-settled rule that a gift to a " wife " of a beneficiary is construed to be a gift to one who occupies that relation at the time of the making of the will. " This general rule has been applied where no contrary intent was found in the context of the will, either expressly or impliedly, or was disclosed by the facts and circumstances surrounding the execution of the will." My determination was affirmed by the Court of Appeals (283 N. Y. 200). Other authorities enunciating this rule are *Schettler* v. *Smith* (41 N. Y. 328, 334); *Van Brunt* v. *Van Brunt* (111 id. 178); *Meeker* v. *Draffen* (201 id. 205); *Williams* v. *Alt* (226 id. 283); *Matter of Tuck* (165 Misc. 346; affd., 256 App. Div. 971; affd., 281 N. Y. 697).

In the pending proceeding it is not necessary to rely solely upon the general rule of construction for it has been affirmatively established that Marguerite Curran was known to the testatrix and was in her thoughts and comprehension as the object of her bounty when she executed the will. Had Marguerite Curran not remarried prior to the death of William Curran, she would have been entitled to the annuity under the terms and conditions set forth in the will. Gwendolyn Curran was wholly unknown to the decedent both at the time of the execution of the will and at the time of decedent's death. Under no circumstances could it be said that she was the specific person intended by the decedent in the words " his wife."

It is difficult to conceive any theory of law under which the second wife could succeed. Since her very existence was unknown to the decedent up to the day of the latter's death, the most that she could claim was that decedent intended the second annuitant to be any person who answered the description at the time of William Curran's death. This might include a person not in being at the death of the testatrix and would render the trust void. (*Matter of Friend*, 168 Misc. 607, 610; affd., 257 App. Div. 924; affd., 283 N. Y. 200, 206; *Matter of Copp*, 176 Misc. 777, 779; *Matter of Trotter*, 175 id. 356, 360, 361.) In view of the determination of the surrogate that Marguerite Curran was the person intended by the decedent, this principle of law is, however, inapplicable.

The surrogate, therefore, holds that the testatrix in the use of the words " and after his death to his wife," referred to and meant Marguerite Curran who was his wife at that time; that the trust terminated upon the death of William G. Curran because of the remarriage of Marguerite Curran prior thereto; and that the corpus of that trust and all accrued income therefrom is payable to the remainderman named in the will.

(Other directions included in the original decision of the Surrogate omitted because of their subordinate importance.)

Submit decree on notice construing the will and settling the account accordingly.