William E. Morgenweck, late of the city of Camden, died March 5th, 1930, leaving a will dated February 6th, 1919, a codicil dated July 25th, 1929, and a further codicil dated February 4th, 1930, all of which were duly probated by the surrogate of Camden county on March 17th, 1930.
Under the provisions of the second codicil, The American National Bank of Camden was made executor, and it assumed the duties of executor, as well as trustee, and has since been so acting.
Under the provisions of the will, certain specific bequests were made which were unaffected by the codicils.
By paragraph 10 of the will, the residuary estate was given to Patrick H. Harding and his successors, in fee, as trustee, and Mr. Harding was also named executor in the will.
The will was prepared by an attorney but both codicils were prepared by Mr. Morgenweck without legal advice. The first codicil made some changes affecting the trust set up in the will, which changes are consistent with it.
The testator was survived by his widow, Margaret S. Morgenweck, by his son, William P. Morgenweck, and by the latter's wife, Lena V. Morgenweck. William P. Morgenweck, the son, had no issue at the time of the testator's death, nor has any been born since, and there was no other deceased child or issue of a deceased child of the testator. Since the filing of the bill, Margaret S. Morgenweck, testator's widow, has died.
The testator, at the time of his death, was possessed of some personal property, but the principal part of his estate consisted of real estate. Of the latter, part was a business property, No. 17 Broadway, running through to Hudson street, Camden, which was leased to a company doing a chain store business, at a substantial rental, which lease is still in effect. This property was subject to a mortgage of $50,000. The other real estate consisted of an undivided interest in a property in Pensauken township, Camden county, which has since *Page 288 
been lost by foreclosure, leaving only the Broadway, Camden, property.
It must be determined to what extent the will and the first codicil were revoked by the second codicil. That part of the will which disposed of the residuary estate is as follows:
"10. I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, wherever situate, of which I shall be seized, or to which I may be entitled at the time of my decease, including, any lapsed legacies, unto my friend, Patrick H. Harding, and his successors, in fee, as trustee, for the following uses and purposes:
"(A) To permit my beloved wife, Margaret S. Morgenweck, during her lifetime, to occupy and use the upper floors of my property, No. 17 Broadway, Camden, N.J.
"(B) To rent or lease the store, workrooms, and outbuildings at No. 17 Broadway, together with machinery, equipment and trade fixtures, or any part thereof, to the best advantage of my estate; provided, however, that as between those willing to give an equal amount of rental, my son, William P. Morgenweck, shall have the preference. My trustee shall take such precautions and require such guaranties or sureties as will compel the leasee to keep the premises occupied by him, and the fixtures and equipment up to and in the same standard repair as the same may be in at the time he receives them, and if a lease be given, the same shall contain a provision that it may be terminated by my trustee, should the leasee fail to comply with this requirement.
"(C) The net profit produced by the rental of said property after the payment of taxes and other expenses, shall be paid by my trustee to my said wife, Margaret S. Morgenweck, which shall be paid to her monthly.
"(D) To sell and convey, at any time, at public or private sale, according to his own judgment, any of my property, except 17 Broadway, Camden, N.J.
"(E) Upon the death of my said wife, Margaret S. Morgenweck, my trustee shall sell the said property, 17 Broadway, to the best advantage; provided, however, that as between those offering the same price, preference shall be given to my said son, William P. Morgenweck.
"(F) At the death of my said wife, the sum of three thousand dollars shall be invested and re-invested by my trustee and his successors as a perpetual fund, the income of which shall be paid by my trustee in equal shares, unto the three following institutions, namely: The Central Y.M.C.A., the Trustees of the Cooper Hospital, and The West Jersey Homeopathic Hospital, all of Camden, New Jersey, payments to be made semi-annually. Should any cease to exist, the others shall take all of said income.
"(G) Of the remainder of said trust estate, my trustee shall, after the death of my said wife, pay and deliver unto my said son, William P. Morgenweck, one-half, as his own absolute property. *Page 289 
"(H) The other half of said remainder of said trust estate shall be divided into two equal parts and held by my trustee for the following purposes: One part thereof to be used to give to the first child born to my said son, if a boy, a good school and college education, and any surplus to be paid to such child at his arrival at the age of twenty-one years. The other part thereof to be used to give his second child, if a boy, a good school and college education, and any surplus to be paid to such child at his arrival at the age of twenty-one years. Should either or both of the first two children of my said son be a girl or girls, the two parts provided for, shall be held by my trustee until her or their arrival at the age of twenty-one years, when the same shall be paid to her or them, respectively. It is my intention that the first two of the children of my said son arriving at the age of twenty-one years, shall take all, to the exclusion of any younger children. Should there be no child or children of my said son, William P. Morgenweck, having taken or capable of taking under this clause at a period of twenty-one years after the time of his marriage, or should he not marry within twenty-one years after the death of the survivor of myself and wife, my trustee shall pay and deliver unto my said son, William P. Morgenweck, the remaining one-half of the proceeds of the sale of said trust estate, or such part thereof as may then remain in the hands of my trustee. Should any son of my said son, William P. Morgenweck, enter into the enjoyment of his share and die before reaching the age of twenty-one years, he shall not be counted and the remainder of the part of my estate that would have gone to such son, shall remain a part of my trust estate, and be subject to the provisions of this clause.
"(I) In case of the death of my said son, William P. Morgenweck, before my death, the income of the entire remainder of my said trust estate shall be paid to the three parties named in paragraph F, in the manner therein provided.
"(J) My said trustee shall have power to invest the assets of the trust estate, in such securities as are allowed by law, and shall secure if possible, such securities as produce a stated income, and such as are exempt from taxation, and may from time to time, change or substitute the securities.
"(K) In case of the death, resignation, or removal of my said trustee or executor, a successor or successors shall be appointed by the court from time to time, each of whom shall have all of the powers hereby conferred upon the original trustee and executor."
The second codicil reads as follows:
"I Wm E Morgenweck, of the City of Camden and County of Camden State of New Jersey, being of sound and disposing mind do make, Publish and declare this a Codicil to my last Will and Testament:
"As soon as possible after my demise all my bills shall be paid from the proceeds of a $5,000 Life Insurance Policy that I have. *Page 290 
"When my securities will bring more that I paid for them they should be sold and the proceeds used to pay off the balance of notes or debt still unpaid. The balance to be placed to the account of the estate — to which there shall also be added the monthly revenue derived from the rental or lease of the property's 17 Broadway and No's 8 and 10 Hudson street.
"Out of this account there should be paid (or set aside from Month to Month a sum sufficient to pay the semi-anual interest and other expenses that there may be) and from the balance there should be paid to my beloved Wife the sum of $100.00 a week during her Life.
"To my Son Wm. P. Morgenweck I bequeth the sum of $50.00 (Fifty Dollars) a week during his Mothers lifetime, but at her death if he survives her this amount shall be increased to One Hundred Dollars ($100.00) a week during his lifetime. Under no condition can this money be attached by any one to pay any debt or debt's incurred by said Wm. P. Morgenweck. If said Wm. P. Morgenweck should have any direct issue at his death, then after his death $100.00 (One Hundred Dollars) shall be set aside weekly to cloth and educate the same, after which each of them shall receive Ten Dollars Weekly (10.00) until they marry after which this amaunt shall be increased to $25.00 a week with the following provision. That his or her mate as the case may be can not attach the same for there use under any circumstances.
"Should however my son Wm. die without issue then at his death and from then on until the end of her natural life his Lawful Wife shall receive a weekly sum of $50.00 (Fifty Dollars) as long as or providing she does not marry again, but should she marry again she will forfeit this allowance.
"As stated above it is my wish that these bequests can under no condition be attached for the satisfaction of a debt of any nature created by any of the above named beneficiarys.
"After the death of My Wife, My Son, His Wife, Or their issue should they have any the income from my estate shall be equally devided semi-annually (after expenses have been deducted therefrom) with the local Hospitals in equal proportions.
"I also name the American National Bank as my Executers of my Estate."
It is apparent from a reading of this second codicil, that it substitutes different provisions for the disposition of the testator's residuary estate, and must be construed as revoking that part of the will.
Where provisions of the codicil conflict or differ from the provisions of the will, the said provisions of the codicil shall be effective, and the provisions of the will which they change and abrogate, shall be null and void and of no effect whatever, and being thus revoked they are definitely and finally non-existent *Page 291 
as operative testamentary provisions, just as much as if the testator had physically destroyed them, no matter whether or not the codicil's substituted provisions or any part thereof be held invalid.
The function of the court is only to construe the will the testator has made, not to make a will for him. McGill v. TrustCompany of New Jersey, 94 N.J. Eq. 657.
The effect of this second codicil is to make void the provisions of the paragraph of the will which is quoted, including the trust fund provided therein for the defendants the Central Y.M.C.A., the trustees of the Cooper Hospital and the West Jersey Homeopathic Hospital.
It is also obvious that the appointment of Patrick H. Harding as executor under the will, as well as trustee, is revoked, and that the executor named in the codicil, The American National Bank of Camden, is constituted not only executor but trustee to carry out such valid trusts as are provided in this second codicil.
It is contended on the part of the complainant that the second codicil, in the construction of which we are now concerned, makes a complete disposition of the testator's estate, and in nowise violates the rule against perpetuities.
As I construe this codicil, the testator directs payment of his debts from the proceeds of a life insurance policy, and provides that when his securities will bring more than he paid for them, they shall be sold and the proceeds used to pay off debts still unpaid from the proceeds of the life insurance policy; and that the balance be placed to the account of the estate, adding the monthly revenue from his Broadway property known as 17 Broadway and 8 and 10 Hudson street, Camden; and that from this account there be paid the interest on the mortgage on these premises and other expenses, and that there then be paid to his wife, Margaret S. Morgenweck, $100 a week during her lifetime, and to his son, William P. Morgenweck, $50 a week, which shall be increased to $100 a week after the death of his mother, such payment to be made during his lifetime. Upon the death of his son, William P. Morgenweck, should he leave an direct issue (such *Page 292 
issue meaning any direct descendant such as a child or grandchild), the sum of $100 weekly shall be set aside to clothe and educate such issue (meaning this amount for all the issue as a class), after which each one of them shall receive $10 weekly until marriage when the amount shall be increased to $25 weekly. If the testator's son, William, should die without issue, then his lawful wife (who may not necessarily be William's present wife, Lena, but any lawful wife he may leave at the time of his death) shall receive $50 weekly during her lieftime unless she should marry again, in which case such payment shall cease; and after the death of testator's wife, his son, William, such wife as the son may leave him surviving at his death, and the son, William's, issue, should there be any, the income from the estate shall be equally divided semi-annually, after deducting expenses therefrom, "with the local hospitals in equal proportions."
Professor Gray states the rule against perpetuities as follows: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray Perp. (3d ed.) 174.
In McGill v. Trust Company of New Jersey, supra, Vice-Chancellor Buchanan said: "It is not enough that the contingency may happen within the time limited by the rule; it must necessarily happen, if it happen at all, within that time. If there be a possibility that it may happen after the time limited by the rule, the gift is void."
In Graves v. Graves, 94 N.J. Eq. 268 (at p. 273), Chancellor Walker said: "It is the possibility that the period covered by a life or lives in being and twenty-one years thereafter may be exceeded, and not the certainty or even probability that it will be exceeded, in a given trust, which calls for the application of the rule."
Vice-Chancellor Lewis, in Gillen v. Hadley, 106 N.J. Eq. 286
(at p. 295), said: "But this limitation does not stand alone, but is only one of several contingencies, and the rule which requires the vesting of the remainder is satisfied only when each and every contingency which is set up as a limitation *Page 293 
upon alienation must necessarily take place within lives in being and twenty-one years."
The measuring life in being for the purposes of applying the rule in this case, is that of testator's son, William P. Morgenweck. The provision for testator's widow and testator's son, William, and for the latter's lawful wife, should any survive him, upon the contingency that he should leave no issue at the time of his death, are valid provisions. It will be noted that the testator's directions for payments are not from income alone from his estate, but from the fund made up from the balance of the proceeds of the sale of his securities after there is added thereto the net revenue derived from the rental of his Broadway property, and that no mention is made of the payment of income from the estate, except in the paragraph of the codicil referring to the payment of the income after the death of his wife, son, his wife, and their issue.
The provision for the unnamed local hospitals violates the rule against perpetuities for the reason that it may not vest until after twenty-one years from some life in being. It is quite possible that testator's son may remarry and that such wife may not be in being at the time of testator's death and may live for more than twenty-one years after the death of the son, William, the life in being at the time of testator's death, thus violating the rule.
So far as the provision for the issue of testator's son, William, as a class, of $100 a week for clothing and education, is concerned, even if it could be said that this provision terminated with the education of the last member of the class, leaving aside the plain direction of clothing in addition to education, it well may be that this provision cannot be carried out within twenty-one years after the death of testator's son, because of the possibility that the education of some one of this class will run beyond that period, and certainly the clothing of them would. It is quite obvious that the provision of $10 per week to each of the issue after all of them are clothed and educated, with the increase to $25 a week upon marriage, may well vest and become operative beyond the time permitted by the rule. These provisions for the issue of testator's son, *Page 294 
constituting one general plan, violate the rule and are therefore void.
It is contended that there is a vesting at the time of the testator's death, of his remaining estate, in the local hospitals, and that only the enjoyment thereof is postponed. With this contention I do not agree.
The complainant herein, named as executor, who becomes trustee as well as executor, is vested with the title to the testator's estate in trust for the purpose of carrying out the valid provisions of the second codicil. If any estate remains after the termination of the trust, then the testator died intestate as to that estate.
There is no power given to the complainant, executor and trustee, under the will or the second codicil, to mortgage or convey the Broadway, Camden, property.
So far as concerns the direction in the second codicil to sell the securities of the testator when they will bring more than he paid for them, the complainant may make application to the court to authorize the sale, upon adequate proof of the facts relating to the specific securities, should the complainant feel that it cannot safely sell without such authority.