In the Matter of the Will of BANNED FRIEND, Deceased.
DOUGLASS NEWMAN et al., as Committee of ANNIE RATKOWSKY, an Incompetent Person, Appellants; ISIDOR FRIEND, as Trustee under the Will of BANNED FRIEND, Deceased, et al., Respondents.

Argued May 4, 1940; decided May 28, 1940.

*Joshua Edelman* and *Irvin A. Edelman* for appellants. The life estates for the " widows " of testator's sons invalidly suspend the power of alienation. (*Matter of Franklin Trust Co.*, 190 App. Div. 575; *Matter of Wilcox*, 194 N. Y. 288; *Meeker* v. *Draffen*, 201 N. Y. 205; *Cogan* v. *McCabe*, 23 Misc. Rep. 739; *Matter of Perkins*, 245 N. Y. 478; *Matter of Tamargo*, 220 N. Y. 225; *Matter of Nelson*, 268 N. Y. 255; *Matter of Hills*, 264 N. Y. 349; *Schettler* v. *Smith*, 41 N. Y. 328; *Durfee* v. *Pomeroy*, 154 N. Y. 583; *Tiers* v. *Tiers*, 98 N. Y. 568; *Matter of Harris*, 152 App. Div. 52; *Matter of Kerwin*, 161 Misc. Rep. 364; *Matter of Milhau*, 151 Misc. Rep. 283; *Wright* v. *Mercein*, 34 Misc. Rep. 414; *Williams* v. *Alt*, 226 N. Y. 283; *Man* v. *Man*, 197 App. Div. 547; *Matter of Liberman*, 279 N. Y. 458.) There is no further valid disposition of the invalid life estates for the sons' " widows," which are distributable *via* intestacy. (*Schettler* v. *Smith*, 41 N. Y. 328; *Purdy* v. *Hayt*, 92 N. Y. 446; *Kalish* v.

*Kalish,* 166 N. Y. 368; *Matter of Horner,* 237 N. Y. 489; *Matter of Silsby,* 229 N. Y. 396; *Schlereth* v. *Schlereth,* 173 N. Y. 444; *Matter of Barnes,* 155 Misc. Rep. 320; *Matter of Chapman,* 169 Misc. Rep. 1035; *Matter of Perkins,* 245 N. Y. 478.)

*Maxwell A. Gronich* for Isidor Friend, as trustee, respondent. The life estates given to " the widow " of Sol Friend and " the widow " of Ike Friend in paragraphs 14a and 14c of the testator's will are valid. (*Matter of Evans,* 234 N. Y. 42; *Scott* v. *Guernsey,* 48 N. Y. 106; *Matter of Pulis,* 220 N. Y. 196; *Miller* v. *Gilbert,* 144 N. Y. 68; *Matter of Corlies,* 150 Misc. Rep. 596; *Matter of King,* 200 N. Y. 189; *Matter of Milhau,* 151 Misc. Rep. 283; *Man* v. *Man,* 197 App. Div. 547; *Davis* v. *Kerr,* 3 App. Div. 322; *Allen* v. *Allen,* 149 N. Y. 280; *Beers* v. *Narramore,* 61 Conn. 13; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Durfee* v. *Pomeroy,* 154 N. Y. 583; *Tiers* v. *Tiers,* 98 N. Y. 568; *Meeker* v. *Draffen,* 201 N. Y. 205; *Matter of Kerwin,* 161 Misc. Rep. 364.) Division of a residuary estate into four parts, each limited upon one life, coupled with a direction that upon the termination of one of the trusts, the corpus thereof be added to the trusts for the remaining lives, does not violate the rule against perpetuities. (*Vanderpoel* v. *Loew,* 112 N. Y. 167; *Schey* v. *Schey,* 194 N. Y. 368; *Orr* v. *Orr,* 147 App. Div. 753; 212 N. Y. 615; *Boynton* v. *Lahens,* 81 Misc. Rep. 352; *Chastain* v. *Dickinson,* 138 App. Div. 746; 201 N. Y. 538.)

*Alexander Pfeiffer* for Martha Simon et al., respondents. The trusts for the lives of the widows of testator's sons are valid. (*Williams* v. *Alt,* 226 N. Y. 283; *Wood* v. *Lucy, Lady Duff-Gordon,* 222 N. Y. 88; *Burnett* v. *Wells,* 289 U. S. 670; *Schlettler* v. *Smith,* 41 N. Y. 328; *Matter of Coley,* [1903] 2 Ch. Div. 102; *Beers* v. *Narramore,* 61 Conn. 13; *Anshutz* v. *Miller,* 81 Penn. St. 212; *Matter of Solms,* 253 Penn. St. 293; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Meeker* v. *Draffen,* 201 N. Y. 205; *Allen* v. *Allen,* 149 N. Y. 280; *Man* v. *Man,* 197 App. Div. 547; *Davis* v. *Kerr,* 3 App. Div. 322;

*Neponsit P. Q. Assn.* v. *Emigrant Industrial Sav. Bank,* 278 N. Y. 248; *Towne* v. *Eisner,* 245 U. S. 418.) If the trusts for the lives of the widows of testator's sons are invalid they must be excised and the residue accelerated. (*Matter of Durand,* 250 N. Y. 45; *Matter of Trevor,* 239 N. Y. 6; *Matter of Horner,* 237 N. Y. 489; *Smith* v. *Chesebrough,* 176 N. Y. 317; *Kalish* v. *Kalish,* 166 N. Y. 368; *Matter of Berry,* 154 App. Div. 509; *Matter of Murray,* 75 App. Div. 246; *Hascall* v. *King,* 162 N. Y. 134; *Henderson* v. *Henderson,* 113 N. Y. 1; *Herzog* v. *Title G. & T. Co.,* 177 N. Y. 86; *Matter of Abbey,* 98 Misc. Rep. 506; 181 App. Div. 395; *Matter of Central Union Tr. Co.,* 193 App. Div. 292; *Carrier* v. *Carrier,* 226 N. Y. 114; *Matter of Gallien,* 247 N. Y. 195; *Matter of Silsby,* 229 N. Y. 396; *Oliver* v. *Wells,* 254 N. Y. 451.)

*Ludlow S. Fowler* and *Thomas Stokes* for Celia Friend et al., respondents. The trusts for the widows of the sons are valid. (*Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Davis* v. *Kerr,* 3 App. Div. 322; *Allen* v. *Allen,* 149 N. Y. 280; *Beers* v. *Narramore,* 61 Conn. 13; *Anshutz* v. *Miller,* 81 Penn. St. 212; *Matter of Solms,* 253 Penn. St. 293; *Matter of Coley,* [1903] 2 Ch. Div. 102.) There is no rule which necessitates a different construction for the words " wife " and " widow." (*Schettler* v. *Smith,* 41 N. Y. 328; *Tiers* v. *Tiers,* 98 N. Y. 568; *Durfee* v. *Pomeroy,* 154 N. Y. 583; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Davis* v. *Kerr,* 3 App. Div. 322; *Man* v. *Man,* 197 App. Div. 547; *Meeker* v. *Draffen,* 201 N. Y. 205; *Allen* v. *Allen,* 149 N. Y. 280.)

*Benjamin Esberg* for Benjamin W. Huebsch et al., as administrators with the will annexed of Joshua Kantrowitz, deceased, respondents. The trust for the life of the widow of testator's son, as set up in paragraph Fourteenth, subdivision (a), is valid. (*Matter of King,* 200 N. Y. 189; *Van Brunt* v. *Van Brunt,* 111 N. Y. 178; *Anshutz* v. *Miller,* 81 Penn. St. 212; *Beers* v. *Narramore,* 61 Conn. 13; *Davis* v. *Kerr,* 3 App. Div. 322; *Schettler* v. *Smith,* 41 N. Y. 328; *Meeker* v. *Draffen,* 201 N. Y. 205; *Purdy* v. *Hayt,* 92 N. Y. 446; *Man* v. *Man,* 197 App. Div. 547; *Central Trust Co.* v. *Egleston,* 185 N. Y. 23.)

*William M. Silverman* and *Herbert Friedman* for Milton Ratkowsky, respondent. The dominant purpose and intent of the testator was to dispose of his entire estate, to benefit his sons and daughters, to provide for his grandchildren and to provide an income for the wives of his sons during the rest of their natural lives or until they remarry. (*Davis* v. *Kerr*, 3 App. Div. 322; *Schlettler* v. *Smith*, 41 N. Y. 328.) Where a will is susceptible of two interpretations, one of which would render it valid and the other invalid, the presumption is that a valid disposition was intended. (*Davis* v. *Kerr*, 3 App. Div. 322.)

LEHMAN, Ch. J. The testator died on June 30, 1932. Four children, two daughters and two married sons, survived him. In his will (paragraph fourteenth) he directed his executors to divide his residuary estate into four equal parts. In four separate clauses of the same paragraph he then disposed of the four parts. In each of such clauses he provided that one share should be held in trust during the lifetime of the child named in that clause and the interest paid to such child and after the death of the life beneficiary leaving issue, the testator devised that share to such issue. In the contingency that the life beneficiary of any share died without issue, the testator made other disposition of that share. The validity of the testamentary disposition of the shares held in trust for the daughters is not challenged. Upon the death of each the share was devised absolutely to remaindermen. There is no suspension of the power of alienation of those shares beyond two lives in being at the death of the testator under any possible construction of the will or in any contingency. The questions presented upon this appeal concern only the validity of the testamentary disposition of the two shares held in trust for the benefit of the testator's two sons.

The two clauses of the residuary paragraph of the will which dispose of the two shares of which the testator's sons, Sol and Ike, were the life beneficiaries are identical except for the name of the beneficiary. We quote clause " a;"

" a: One of such equal shares and parts, I give, devise and bequeath unto my said Executors, in trust, to safely keep, invest and re-invest the same, and to collect and receive the rents, issues, interest and income thereof, and to apply the net amount of the said rents, issues, interest and income to and for the use and benefit of my son Sol Friend, for and during the term of his natural life, and upon the death of my said son Sol Friend, I direct my said Executors to divide the principal thereof into as many equal parts as there are children of my said son Sol Friend, him surviving, and I give, devise and bequeath one of such equal shares or parts to each of the said children of my son Sol him surviving, per stirpes and not per capita, equally share and share alike. Should my said son Sol die without leaving issue him surviving, then and in that event, I direct my said Executors to divide the principal of the trust fund in this subdivision created, into two equal shares or parts, and I direct that one of such shares or parts shall revert to and form part of my residuary estate, and I direct my said Executors to apply the rents, issues, interest and income of the remaining one-half share or part to and for the use and benefit of the widow of my said son Sol, for and during the term of her natural life, or until she re-marries, and upon the happening of either event, the said remaining one-half share or part shall revert to and become part of my residuary estate."

Sol Friend died on June 2, 1933, without issue. His wife survived him. Ike Friend died eight days thereafter. Like his brother he left a wife but no issue him surviving. Under the terms of the will, the disposition of the remainder of the fund held in trust for each son depended upon alternative contingencies, which could be determined only upon the death of the life beneficiary. In one contingency — the death of the life tenant leaving issue — the fund would go absolutely to such issue. In such contingency there would be no suspension or restraint of the power of alienation beyond one life, and the disposition would be valid. Since neither son died leaving issue, we are concerned only with the limitation to take effect upon the alternative contin-

gency — the death of the life tenant without issue. In that contingency one-half of the fund was immediately to revert and form part of the residuary estate of the testator and the other half was to be held in trust for the life of the widow and after her death become part of the residuary estate.

In proceedings for the settlement of the account of the executors and for a construction of the will, the committee of one of the testator's next of kin has challenged the validity of the provisions of the will for the benefit of the widows of the two sons. The sons were married to them at the time the testator executed the will, but it is said that at the death of the testator it was possible that either son might survive his wife and might then marry a woman not yet born at the death of the testator. In that event, a trust for the life of the son and thereafter for the life of his " widow " would not terminate upon the death of two persons in being at the death of the testator, if the term " widow " is broad enough to include not only the wife to whom the son was married at the death of the testator but any woman whom the son might marry thereafter. This court has said that a testamentary disposition which would in any possible contingency attempt to create such a trust would be invalid, for " in determining the validity of limitation of estates * * * it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period." (*Schettler* v. *Smith*, 41 N. Y. 328, 334.) The Surrogate held, however, that the testator in this case intended that after the death of each son without issue, a part of the share held in trust for him should continue to be held in trust for his " widow " only if the wife of such beneficiary, who was known to the testator and was in the testator's mind when he executed the will, survived her husband and that the will is misread if the word " widow " is given wider scope. We agree with the interpretation which, under the circumstances of this case, the Surrogate has given to the word " widow."

Concededly, however, after the death of each widow the testamentary disposition of the fund held in trust for her is invalid. She would be the second life beneficiary and any additional life estate would violate the statute against perpetuities; and since the testator has provided that the fund shall, at the death of the widow, become part of his residuary estate, and since, under the terms of the will, each part of the residuary estate must be held in trust for one of the testator's children during the life of that child, it cannot be questioned that in some contingencies there would be a suspension of the power of alienation beyond two lives. So the Surrogate has held in regard to the funds held for the widows of both sons, and no appeal has been taken from that part of his decision by any party.

The question remains whether the provision of the will that the remaining one-half of the share held in trust for each son shall *immediately*, after his death without children, revert to and become part of the residuary estate is valid. Upon Sol's death, one-half of the share held in trust for him was then added to the shares held in trust for the testator's three surviving children. Under the terms of the will, the shares of the residuary estate held in trust for the two daughters would, upon the death of the life beneficiary, be paid over to the remaindermen absolutely. Thus, the part of the share of the residuary estate which was originally held in trust for Sol and then added to the share held in trust for the testator's daughters, would in no contingency be held in trust for more than two lives in being. That is not true of the part added to the share held in trust for the testator's son Ike. As we have said, the clause of the will providing for the disposition of the share held in trust for Ike was in the same words as the clause providing for the disposition of the share held in trust for Sol. Under the terms of the will, one-half of the trust fund would be held in trust for his widow and the other half would be held in trust for the testator's surviving children. Since at the death of Ike, the part or sub-share, which at Sol's death was added to the principal of the fund held in trust for Ike, had already been held for

two lives in being, the Surrogate was constrained to hold that no part of it could again be added to any trust fund in accordance with the provision of the will, but passed to the persons entitled to take the property of the testator as if he had died intestate.

At the testator's death, when the testamentary disposition of the property took effect, it was, of course, impossible to foretell which son would survive the other or whether either son would survive his wife. If the limitations after the first life estate are given effect, then in some contingencies the share held for either son might be held in trust for only one life; in other contingencies, a one-sixth part of such share would be held in trust for more than two lives. If the validity or invalidity of the testamentary disposition is tested not " by the happening of subsequent events " but by " every possible contingency " which might occur after the will took effect, in accordance with the rule stated in *Schettler* v. *Smith* (*supra*), then the same taint which rendered invalid the testamentary disposition of part of the share directed to be held in trust for Sol was inherent in the testamentary disposition of the share directed to be held in trust for Ike; for the disposition was in the same terms and subject to the same contingencies. Nevertheless, perhaps by inadvertence, the Surrogate did not decree that one-sixth of the share which the testator directed should be held in trust for Ike and which would have been added at Ike's death to the principal of the fund held in trust for Sol if Sol had survived Ike, passed as intestate property, and not under the will, after both Ike and Sol had died; though he did decree invalid the attempted testamentary disposition after Ike's death of the part of the share originally held in trust for Sol, which at Sol's death had been added to the principal of the trust for the benefit of Ike.

Only one of the respondents attempts to sustain this ruling. From the practical standpoint the ruling is not very important to any party and the question involved was not stressed either in the courts below or here. The test of the validity of limitations is always whether an estate attempted to be

created must in every possible contingency terminate within two lives in being. That rule is complemented by the further rule that " a limitation \* \* \* made to take effect on two alternative events " will be sustained if in every possible contingency the estate would terminate within the statutory period, though the limitation which would take effect if the alternative event had taken place would violate the statute. (*Schettler* v. *Smith, supra,* p. 336.) In accordance with that complementary rule, the disposition of the fund held for either son would have been valid if such son had died leaving issue. It has, however, no application here. The contingency upon which the testator provided that a part of the share held for each son shall become part of the residuary estate is the death of the life beneficiary without issue. The death of the brother of the life beneficiary before the life beneficiary was not a contingency which would give rise to any other gift or limitation. It was a contingency which would only determine when the trusts would terminate. The gift or limitation was bound to result in the suspension of the power of alienation beyond two lives if the life beneficiary died before his brother. Even an alternative limitation can be given no effect unless *that* limitation " by no possibility and in no contingency can endure longer than during the existence of two lives in being." (*Schermerhorn* v. *Cotting,* 131 N. Y. 48, 63.)

It follows that the order of the Appellate Division and the decree of the Surrogate's Court should be modified by providing that upon the death of both Sol Friend and Ike Friend, one-sixth of the principal of the trust funds established for them by clauses " a " and " c " of paragraph fourteen of the will passed to the persons entitled to take the property of the testator as if he had died intestate, and as so modified, affirmed with costs, payable out of the estate, to all parties filing separate briefs. (See 283 N. Y. 775.)

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.