ANNA NORTON GANNETT, Appellant, v. JOHN R. SHEPLEY, CHARLES M. RICE, ALFRED FAIRBANK, HERBERT D. CONDIE, and RIGHT REVEREND WILLIAM SCARLETT, Trustees Under the Will of George D. Barnard, Deceased, BARNARD FREE SKIN AND CANCER HOSPITAL and EPISCOPAL DIOCESE OF MISSOURI OF PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA.—No. 38441.—172 S. W. (2d), 857.

Division Two, June 7, 1943.

Rehearing Denied, July 6, 1943.

*Edward A. Haid* for appellant.

*Nagel, Kirby, Orrick & Shepley, William G. Pettus, Jr., Alvin J. Goodbar* and *Goodbar & Ferriss* for respondents.

BARRETT, C.—In this action Anna Norton Gannett, the second wife of John M. Gannett, seeks to recover the sum of $1,800.00 per year (from November 28, 1936, to the institution of this suit in 1942) from the trustees under the will of George D. Barnard. Whether she is entitled to recover depends upon the interpretation to be given George D. Barnard's will and particularly the construction to be placed upon the following part of the tenth clause:

"to my brother-in-law, John M. Gannett, and to my brother-in-law, Gordon Willis, so long as each shall live, they shall pay to each the sum of Eighteen Hundred Dollars ($1800.00) per year, and in case the said Gannett or the said Willis shall die before I do, *leaving his wife him surviving,* or in case the said Gannett or the said Willis should die after I do, *leaving his wife him surviving, then the wife of the said Gannett so surviving,* . . . shall be paid a like sum as is herein provided to be paid to her husband, so long as she shall live."

Mr. Barnard's will was executed on January 16, 1914. He died May 3, 1915. At that time John M. Gannett was sixty-two years of age and had been married to Clara Gannett for twenty-five years. Clara Gannett and Letha Willis, the wife of Gordon Willis also mentioned in the tenth clause, and Mr. Barnard's wife, Mary, were sisters. And, according to the pleadings and agreed facts upon which the case was tried, "the social and family relationship between George D. Barnard and his wife, and his brothers-in-law and their wives were close, cordial and harmonious." Clara Gannett died in May, 1920. John M. Gannett married the plaintiff, Anna Norton Gannett, on August 17, 1921. Mr. Gannett was paid the $1,800.00 provided by the will until his death on November 28, 1936, and his widow and second wife now claims that since Mr. Gannett died she is entitled to receive the annual payments provided in the will.

Her position is that construing the terms of the will, without guessing, conjecturing or imagining what the testator intended, the bequest to John M. Gannett "leaving his wife him surviving, then the wife of said Gannett so surviving" means any wife who may have survived him and she being such a one is entitled to the benefits provided in the will. To substantiate her position the plaintiff points out that in another clause, when the testator referred to Gannett's wife, he used her given name, thus indicating that if he had desired to limit the bequest in the tenth clause to Clara he would have again used her given name. She says this is especially true when it is observed from the will that when the testator intended known persons he invariably referred to them by their given names. The trustees, on the other hand, contend that because Clara was the wife of John M. Gannett at the time the will was executed and at the time of Mr. Barnard's death that she alone was the person referred to and intended as the beneficiary of this clause. Their argument is that the word "wife" means and has reference to the person occupying that

position at the time of the testator's death to the exclusion of one afterwards occupying that position.

The trial court decreed: "That, as indicated by the will as a whole and in the light of the surrounding circumstances, the true intent and meaning of the testator . . . was to benefit his wife's sister, Clara Gannett, wife of his brother-in-law, . . . rather than the plaintiff, Anna M. Gannett, widow of John M. Gannett, whose wife she became some seven years after the execution of said will and some six years after the death of the testator." It is our view that the trial court correctly interpreted the will and that Clara Gannett alone was intended as John M. Gannett's surviving wife and Mr. Barnard's beneficiary under the tenth clause.

The trial court properly considered the provisions of "the will as a whole and in the light of the surrounding circumstances," that is, the circumstances at the time the will was executed. It is true that we must "have due regard to the directions of the will, and the true intent and meaning of the testator" in construing his will. Mo. R. S. A., Sec. 568. And, his intention must be determined from the will itself and not by attempting to guess at what he may have meant or what he might have done under certain conditions not expressed in the will. Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644; Brock [859] v. Dorman, 339 Mo. 611, 98 S. W. (2d) 672. Especially is it true that only the will itself may be considered when there are no surrounding circumstances and the facts as they were known to and may have been considered by the testator do not appear as was the case in Pommer v. Catholic Church, 316 Mo. 1016, 292 S. W. 417. But, when the terms of a will are not so plain and unambiguous as to leave no room for doubt or construction as to what the testator intended certain auxiliary rules of construction must be looked to and if there are any surrounding circumstances they must be considered. Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947. In such instances the court is entitled to be placed in possession of all the information which is available of the circumstances and facts as they appeared to the testator when he executed his will "to the end that the court may be in his situation as nearly as may be, and interpret and understand the will as he would if he were living." Rowe v. Strother, 341 Mo. 1149, 111 S. W. (2d) 93; 69 C. J., Secs. 1119, 1120. And these general principles apply "to the ascertainment of the intended beneficiary of the testator. . . . In order to determine the object of the testator's bounty, the court may inquire into every material fact relating to the person who claims to be interested in the will, and into the circumstances of the testator, and of his family and affairs." 69 C. J., Sec. 1190, p. 165.

In this case both parties rely upon an auxiliary rule which they claim to be determinative of the controversy in their or her favor and it is this point which presents some novelty of principle

so far as this jurisdiction is concerned. The defendants say that because Clara was the wife of John M. Gannett at the date of the execution of the will and at Mr. Barnard's death his use of the words "his wife him surviving," as a matter of law, has reference to the person occupying that position at the time of his (Barnard's) death and not to one who might afterwards occupy that position. The plaintiff says the words mean "any wife" he may leave at the time of his death.

We do not think the rule can be stated to be an inexorable principle as the defendants contend so that in every case the words "his wife him surviving" must be interpreted to mean that the testator intended the person occupying the position of wife at the time he executed his will or died. Neither do we think the rule is inexorably the converse as the plaintiff claims, nor is it made so by reason of the fact that the testator in another clause of the will refers to Gannett's wife by her given name. It may be that ordinarily and prima facie a gift, devise or bequest to a husband or wife of a certain named person means the person who answers that description at the date of the will and does not include or extend to an after taken husband or wife. 69 C. J., Sec. 1221, pp. 193-194; 3 Page, Wills, Sec. 1007; annotation 63 A. L. R. 81. But, "The rules thus laid down, while doubtless as correct as generalization upon the question of the construction of wills can be, are so likely to be superseded *by a context containing indications of a different meaning, as to be of little practical value.* The element of ultimate importance is the intention of the testator." Annotation 63 A. L. R., l. c. 81. The important thing is the "context" in which the word or phrase is used. 3 Page, Wills, Sec. 1007. Furthermore, the circumstances of whether the named person had a wife when the will was executed or whether the wife of the named person died before the testator may have some bearing on the testator's intention. 63 A. L. R., l. c. 88, 90.

The cases relied on by the parties only serve to illustrate that each will presents its own peculiar problem of construction and that who the testator intended by the use of the word "husband" or "wife" in designating a beneficiary depends largely on the context and the circumstances surrounding the testator when his will was executed. For example, in Perry v. Perry, 110 Ky. 16, 60 S. W. 855, the devise was to a son for life and "at the death of himself and wife said property to pass to his legal heirs." From the context it was apparent that the testator intended and one of his chief concerns was to provide for his son's heirs—not because he knew or might know who they were but because he was conscious of the claim the children would have on the son for support and maintenance—and it was held that the word "wife" included a second wife. Also the use of the word "widow" together with the word "wife" as "to the surviving wife or widow of said son" may indicate that the testator intended any wife surviving

his son as a beneficiary. Wallace v. Cutsinger, 66 Ind. App. 185, 115 [860] N. E. 789; Meeker v. Draffen, 201 N. Y. 205, 94 N. E. 626. Although, the use of the word "widow" does not conclusively and in any event include a second wife, the context in which it is placed may demonstrate that the testator was speaking of an existing fact and intended the person then known to him as his beneficiary when she became a widow. Matter of Friend, 283 N. Y. 200, 28 N. E. (2d) 377. And the phrases "a wife" or "lawful wife" may mean any wife, depending on the context and circumstances. Williams v. Fundingsland, 74 Colo. 315, 221 Pac. 1084, 63 A. L. R. 77; American National Bank of Camden v. Morgenweck, 114 N. J. Eq. 286, 168 Atl. 598.

Applying the indicated principles to the instant case and considering the terms of the will only, it is apparent that Mr. Barnard had two dominant purposes in view in executing his will. The first of these was to provide for his wife as long as she lived and this he did by giving her certain real estate for life, $25,000.00 in cash and $2,000.00 a month for life. The second purpose was the founding of the Barnard Free Skin and Cancer Hospital in St. Louis and this he accomplished by creating a trust. It is readily apparent from the will that all other provisions are subsidiary and secondary. After his wife's death and after the payment of certain specific bequests and after the payment of certain annual or monthly bequests it was contemplated that all his wealth and its income should become a part of the trust as readily as possible and used in the founding and perpetuation of his memorial hospital. This is pointed out because one of these purposes involved careful, long range planning, while the other purpose contemplated a rather short period of time, his wife's life, and not so much careful thought of the future. The will was most carefully drawn despite the seeming ambiguity involved in this clause. It is obvious from the will that Mr. Barnard very definitely knew the individuals and things he intended as beneficiaries. He made a large number of specific bequests in varying sums to employees. To one group he gave $250.00 each provided they had been employed as long as five years, but none of them were to receive a bequest if they were not employed at the time of his death. In the fifth clause of his will he bequeathed his "brother-in-law, John M. Gannett and to Clara Gannett, his wife, to each the sum of Five Thousand Dollars." A similar bequest was made to his brother-in-law, Gordon Willis and his wife, Letha. They were also grouped with the Gannetts in the tenth clause of his will in the same language and to receive the same amounts. It is argued, from this fact, that he specifically named Gannett's wife, Clara, in the fifth clause, and if he had intended her only in the tenth clause he would have named her specifically in that clause which, of course, he could have done by simply inserting her given name after the word "wife." But, it is also arguable, in the

same manner, that because he had once named her that was thought to be a sufficient, peremptory designation and that he used her name the first time to indicate that both the husband and wife were each to receive immediate gifts of $5,000.00, while by the tenth clause he was providing an income for both of them or the survivor. Several annual or monthly payments are called for by the will, most of them in clause ten, but they are all to his relatives, nieces and nephews, or to his wife's relatives, and when there was any possible doubt as to who such a beneficiary might be he limited the time the payments should continue, as in the case of his wife's brother, John Tindall of Chicago, who was to receive a monthly payment of $50.00 "or, if he be dead, to his heirs . . . for the period of ten years." So it was with his cousins in New York, if either of them were dead their children were to receive payments for a period of five years. The point is that when someone not personally known to him, even though a relative, was to become a beneficiary he limited the time during which the payments were to continue and they were invariably his or his wife's blood relatives.

But, even if his intention does not sufficiently and clearly appear from the will itself there can be but little doubt about it in the light of the circumstances existing when the will was executed. From those circumstances it appears that Mr. Barnard was fully informed, not only of the marital status of his nephews but also of the marital relationship of Barnard Willis and John M. Gannett. Clara Gannett and Letha Willis were his wife's sisters and "the social and family relationship between George D. Barnard and his wife, and his brothers-in-law and their wives were close, cordial and harmonious," [861] so the stipulation says. When Mr. Barnard executed his will Mr. Gannett was sixty-two years of age and had been married to Clara for twenty-five years. Willis was fifty-six and had been married to Letha for fifteen years. One of the most telling circumstances in determining an intended beneficiary, when there is some doubt about it, is the relationship of the testator to the beneficiary. Settle v. Shafer, 229 Mo. 561, 129 S. W. 897; Cox v. Jones, 229 Mo. 53, 129 S. W. 495. The bequest to Gannett or in the event of his death "leaving his wife him surviving" read in the light of the circumstances and its context clearly indicates that the testator's intended beneficiary was his wife's sister, Clara Gannett, the person filling the relationship of wife at the time the will was executed and one who was well known to him, and not the plaintiff who became Gannett's wife six years after Mr. Barnard's death. Johnson v. Webber, 65 Conn. 501, 33 Atl. 506.

The judgment, therefore, is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.