**AMERICAN CANCER SOCIETY, MIS-
SOURI DIVISION, INC.,**
Respondent,

v.

**DAMON RUNYON MEMORIAL FUND FOR
CANCER RESEARCH, INC., Appellant.**

No. 24507.

Kansas City, Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Su-
preme Court Denied Dec. 5, 1966.

Application to Transfer Denied Jan. 9, 1967.

William O. Sawyers, Jr., St. Joseph, for
appellant.

Miner & Martin, Richard E. Martin, St.
Joseph, for respondent.

HOWARD, Judge.

This case originated with the filing of a
petition in the Probate Court of Buchanan
County, Missouri, for construction of the
last will and testament of Emma Pauline

Wolff, deceased. The petition presented four questions as to the meaning of the will. We are concerned with only one of these. This is a paragraph in Item Third of the will, making a bequest "to the Damon Runyon Memorial Fund for Cancer Research, St. Joseph, Missouri Chapter, I give (10) Ten Thousand ($10,000) Dollars in cash". It appears that there is no St. Joseph Chapter of the Damon Runyon Memorial Fund. The American Cancer Society, Missouri Division, Inc. and the Damon Runyon Memorial Fund for Cancer Research, Inc., intervened, both claiming to be entitled to this $10,000.00 bequest. The probate court found that the Damon Runyon Fund was entitled to the bequest. The American Cancer Society appealed to the Circuit Court of Buchanan County, which found that the Buchanan County Chapter of the American Cancer Society, Missouri Division, Inc. was entitled to the bequest. The Damon Runyon Fund has duly appealed to this court.

The Damon Runyon Fund does not operate through local chapters. It has only one office, and that is located at 730 Fifth Avenue, New York, 19, New York. On the other hand, The American Cancer Society is organized on the local level and does have a Buchanan County chapter, which has been active for many years in Buchanan County and St. Joseph, Missouri. The Damon Runyon Fund contends that the words "St. Joseph, Missouri, Chapter" should be treated as surplusage and as the equivalent of a mere erroneous address, and that the bequest should go to the Damon Runyon Memorial Fund for Cancer Research, Inc., which is admittedly located only in New York City. The American Cancer Society contends that it was testatrix's intention to benefit the only local organization active in the field of cancer research, and that is the local chapter of the American Cancer Society, which should be given this cash bequest.

Mr. and Mrs. Wolff had been long time residents of St. Joseph, Missouri. They executed what has been described as re-

ciprocal wills, that is, each spouse left all of his or her property to the other, with provision for various bequests in the event that such other predeceased the testator. The list of specific bequests was identical in each will. It so happened that Mrs. Wolff survived her husband, thus all of his property passed under his will to Mrs. Wolff, and on her death, the specific bequests became effective. Her will made four bequests of specific personal property and distributed over $250,000.00 in cash by specific bequests, to one sister, four nieces, one great nephew, seven individuals who do not appear to be related to her, and twenty organizations. Of these twenty organizations (excluding the bequest under consideration) all were either local organizations or local branches of national organizations, except four: The Shriners Hospital for Crippled Children at St. Louis, Missouri; The Masonic Home of St. Louis, Missouri; The School of the Ozarks, Point Lookout, Missouri; and The Boys Club of America, 381 4th Avenue, New York, 16, New York. As to this last organization, the bequest provided "If this organization has a St. Joseph, Missouri, branch, the above bequest is intended for the St. Joseph Chapter".

The residuary clause, after payment of expenses, taxes etc. provided for equal distribution among testatrix's sister, her four nieces, and one great nephew, or such of them as were alive at the time of such distribution.

Trial below was to the court, a jury having been waived, and on this appeal, we must determine which of the claimants is entitled to receive this $10,000.00 bequest, or whether such bequest fails for lack of an entity capable of taking. The parties are in agreement that in our construction of this provision of the will, we must be governed by the intention of the testatrix, and that such intention is to be gathered from the will as a whole, supported by extrinsic evidence if the provisions of the will are ambiguous. It is

apparent from what has been said that because there is no St. Joseph chapter of the Damon Runyon Memorial Fund for Cancer Research, Inc., we are faced with a latent ambiguity and extrinsic evidence was properly considered by the court below. The situation is strikingly similar to that presented in the case of Evans v. Volunteers of America, Mo., 280 S.W.2d 1, where the court said: "It is obvious that our task upon this appeal is to determine which of the organizations named in said items is, in fact, the devisee and legatee therein. In construing wills, the paramount rule, to which all others must yield, is that the intention of the testator governs unless it conflicts with some positive rule of law, and that intention is to be gathered from the will as a whole. Section 468.620 RSMo 1949, V.A.M.S.; Gannett v. Shepley, 351 Mo. 286, 172 S.W.2d 857. In the event the will is ambiguous, extrinsic evidence is admissible as to the circumstances surrounding the testator when the will was executed."

◼ Appellant claims that the trial court erred in admitting evidence of certain declarations of testatrix and her husband that they intended to or had made a bequest to the local cancer society. It relies on the general rule that such declarations are not admissible on the question of the construction to be given to the language in the will. However, appellant overlooks the fact that we are here faced with the problem of resolving a latent ambiguity as to the identity of the beneficiary intended in this bequest. Such declarations by the testatrix are admissible on the question of identity, as was specifically pointed out in Evans v. Volunteers of America, supra, where the court said: "The general rule heretofore set out, however, does not appear to prohibit testimony by the scrivener when such is necessary in order to resolve a latent ambiguity as to the identity of a beneficiary. Such a situation arises when a description of a legatee (as in the instant case) will apply, with more or less certainty, to two or more persons or corporations. A review

of many cases has led us to the definite conclusion that, under the law of Missouri and many other states, evidence of a testator's instructions to the scrivener (under circumstances such as exist in the instant case) is admissible to assist in establishing the intention of the testator as to the identity of a legatee under a description which is equivocal and latently ambiguous. Willard v. Darrah, 168 Mo. 660, 68 S.W. 1023; Hockensmith v. Slusher, 26 Mo. 237; Bond v. Riley, 317 Mo. 594, 296 S.W. 401; In re Miller's Estate, 26 Pa.Super. 443; Day v. Webler, 93 Conn. 308, 105 A. 618; Covert v. Sebern, 73 Iowa 564, 35 N.W. 636; Bradley v. Rees, 113 Ill. 327, 55 Am.Rep. 422." We therefore rule that the evidence below was admissible for whatever it may be worth.

At the trial below the Damon Runyon Memorial Fund did not offer any evidence. The American Cancer Society offered evidence to show that it had a local organization, which was at one time known as the Buchanan County Chapter of the American Cancer Society. This was later changed to the Buchanan County Unit of the American Cancer Society. There was no St. Joseph organization, only the Buchanan County organization. This local unit was not a corporate entity, but was the local office of the American Cancer Society, Missouri Division, Inc., which was the corporate entity. The local unit engaged in a program of supplying bandages and other materials to local cancer patients, arranging for transportation to the state cancer hospital, maintaining a "loan closet" of equipment for loan to cancer patients, educational programs for showing moving pictures and conducting educational activities with local groups and in raising funds. These funds were not distributed by the local unit but went to the Missouri division. From one-fourth to one-third of the funds raised were used for research and the local office made statistical reports to the state and national office for use in statistical research on cancer. The evidence showed that this organization was often referred

to by names other than its full and complete title; it was more often called variously just "The Cancer Society" or "The Buchanan County Cancer Society" or "The St. Joseph Cancer Society". There was no evidence that it was ever referred to as the Damon Runyon Memorial Cancer Fund. There was no other organization, locally, active in the cancer field.

The bandages which the Buchanan County unit of the American Cancer Society furnished to cancer patients were made by volunteer workers and much of this volunteer work was done through the various chapters of the Eastern Star. The testatrix, Mrs. Wolff, through her Eastern Star Chapter, participated in this volunteer work on bandages for the American Cancer Society. Mr. and Mrs. Wolff were friendly with Mr. and Mrs. Ellershaw. The Ellershaws often visited in the Wolff home and they regularly took Mrs. Wolff to Eastern Star meetings and functions. The testatrix's will, and that of her husband, were both executed May 3, 1957. At that time Mr. and Mrs. Ellershaw were active in fund raising for the American Cancer Society. Mrs. Ellershaw continued active in such fund raising and Mr. Ellershaw, in later years, assumed an executive position with the Buchanan County unit of the American Cancer Society, being chairman of the Board of Directors at the time he testified. The Ellershaws often discussed their activities for the American Cancer Society with the Wolffs. Both Mr. and Mrs. Wolff repeatedly complimented and praised the Ellershaws for their good work in connection with the local unit of the American Cancer Society. Mrs. Wolff contributed money to the fund raising campaigns of the American Cancer Society by contributions to fund raisers who called at her door. The Ellershaws did not solicit funds in the area of the Wolff home and therefore did not receive money from Mrs. Wolff. Evidence was adduced that Mr. and Mrs. Wolff stated to the Ellershaws on two or more occasions that they (the Wolffs) were remembering or had remem-

bered "your cancer society" in our will and that they were "going to see that your society gets money". The witnesses were not able to pinpoint the date of these statements, but from all the evidence we conclude that these statements were all made after the execution of the wills. The testimony of the Ellershaws was not precise. Taken as a whole, it is not clear whether the statements by either Mr. or Mrs. Wolff were statements that they had in fact made a bequest to the American Cancer Society, or whether they were statements that they intended to make provision for the society in the future. In these circumstances, this evidence carries very little weight.

From the evidence it appears that testatrix and her husband were both familiar with the work of the American Cancer Society, through its local unit. They were described as being competent and businesslike people, especially Mr. Wolff, and it is inconceivable that they did not know the name of the American Cancer Society or that they would confuse the American Cancer Society with the Damon Runyon Memorial Fund. The evidence was that no one had ever heard either Mr. or Mrs. Wolff refer to the Damon Runyon Memorial Fund. The only evidence concerning the Damon Runyon Memorial Fund in the St. Joseph area was that witnesses had read about it in the newspaper and had heard fund solicitations for the organization on radio and TV, primarily by Walter Winchell.

From this evidence, we can only conclude that testatrix and her husband knew of the American Cancer Society and the work of its local unit and that they did not intend to make a bequest to such society by the provision in the will giving $10,000.00 in cash to the Damon Runyon Memorial Fund. It is inconceivable that they meant the one when they said the other, when the two names have nothing in common and could not readily be confused. We therefore hold that the trial court erred

when it found that the American Cancer Society was entitled to the bequest.

Since this was a trial to the court without a jury, we are now faced with the proper judgment to be entered in this case. Can we hold that the Damon Runyon Memorial Fund is entitled to the bequest which was made to "The Damon Runyon Memorial Fund for Cancer Research, St. Joseph, Missouri Chapter"? We have concluded that we can not. The pattern established by the specific bequests to twenty different organizations shows that testatrix and her husband desired primarily to benefit local charitable organizations. Of the four exceptions to this pattern, two were to Masonic institutions. Mr. Wolff was active in the Masons and Mrs. Wolff in the Eastern Star. One bequest was to the School of the Ozarks at Point Lookout, Missouri, and the other was to the Boys Clubs of America. In this last instance it appears that the testatrix and her husband were not certain whether or not the Boys Club had a local organization, and they, therefore, carefully provided that it should go to the particular organization in New York, unless there was a local organization, in which case, "the above bequest is intended for the St. Joseph, Missouri Chapter." Such provision was not included in the bequest to the Damon Runyon Memorial Fund. It is thus apparent to us that testatrix, and her husband, believed that there was a local chapter of the Damon Runyon Memorial Fund, and that testatrix intended to make this gift to the local chapter and not to the national organization of the Damon Runyon Memorial Fund in New York City. Since there is no chapter or organization capable of taking, as described in this bequest, we are forced to the conclusion that the bequest must fail. We are convinced that if we were to award this gift to the Damon Runyon Memorial Fund in New York City, we would be going contrary to the intent of the testatrix, and that such conclusion could only be supported by speculation and conjecture.

We note that under this holding this bequest will become part of the residuary estate, which under the will, will be divided among such of the relatives of testatrix as are alive at the time of distribution.

The judgment of the trial court is therefore reversed and the cause remanded with direction to enter a judgment in accordance with this opinion.

All concur.